## Martin v. J. Bacon & Sons.

(Decided March 26, 1937.)

B. M. VINCENT, Attorney General, and M. B. HOLIFIELD, Assistant Attorney General, for appellant.

WOODWARD, DAWSON & HOBSON for appellee.

OPINION OF THE COURT BY JUDGE BAIRD—Reversing.

This is an appeal from a judgment of the Franklin circuit court, wherein that part of section 4281d-2, Kentucky Statutes, designated by the letter (f) of section 2 of the act of the General Assembly passed at its Third Extra Session (Acts 1936, 3d Ex. Sess., c. 3), beginning on the 30th day of March, 1936, declaring said section, imposing a tax on cosmetics and kindred articles set out and enumerated therein, to be unconstitutional, because the act imposes a tax on any Kentucky retailer in receiving cosmetics shipped transported to him in interstate commerce; that the receipt of said cosmetics is an essential and material part of interstate commerce and cannot constitutionally be burdened by a state tax upon such receipts, etc. We are called upon to review that judgment.

There are some questions that arise that cannot be finally settled. The chief one is taxation. Our commercial and industrial activities have increased so rapidly in the last half century that to support our state government and keep it apace with the activities of the age, new methods of taxation are being applied by the legislative department of our state government. Almost at every assemblage of our Legislature, new methods

are applied. The complexities of our social, commercial, and industrial interests demand for their support and safety, the application of a number of forms of taxation. There was a time in history when an ad valorem and per capita tax met every emergency, and kept the wheels of government moving to the satisfaction of the people. That time has passed. Inventions of the age, application of scientific principles, discovery of new and unexpected modes of living by the common man, and the application of modern appliances used in industry and transportation; in fact, in all of the activities of life, we are compelled to adopt new methods of taxation. In this age, when changes and advancements come almost overnight in commercial activities and industrial transactions, the court must not cripple or throw a barrier in the way of the legislative department of our government in making laws imposing taxes to meet the necessary demand of government, if it can be avoided. While we must not overlook the basic principles contained in the Federal and State Constitutions, still the meaning of words, or even of whole sentences, used in legislative enactments, must not be contracted and limited, as to bring a law in opposition to the Federal or State Constitution, especially as it affects taxation, if it can be avoided. The only reasonable method that civilization and the best intelligence of man has ever, or will ever, devise, in the support of government is that of taxation; consequently, with such actuating purposes, the question before us will be and must be considered. The courts, as well as officers of the courts, whom we denominate as lawyers and counselors, if civilization and advancement in righteous living be protected and promulgated, must remember that oftentimes by our training, education, and surroundings, we find ourselves in the narrow channel herein referred to, and unconsciously we declare and adjudge acts of the Legislature to be in opposition and in conflict to some parts of the State or Federal Constitution, when if viewed with a broad and forward outlook it would not be the case.

To meet the varied demands of our government, we now have in operation a number of new kinds of taxation—the franchise, income, excise, and license tax, in addition to an ad valorem and per capita tax. When we name them, the common man stands abashed, for the majority of our citizens do not know the meaning of

such taxes, much less the proper application. The courts differ as to the application of same, when, how, and on what imposed. The less learned citizens in legal lore, often, severely and properly, we fear, condemn and criticize the judgment of the courts, especially when the question of constitutionality of acts of the General Assembly of our government is assaulted. Such attacks are in many instances made especially by those citizens and taxpayers of the commonwealth who, by reason of inate selfishness and sometimes lack of patriotism, undertake to shift the burden of taxation from their shoulders onto the shoulders of the other fellow.

In considering the constitutionality of an act of the Legislature, a branch of our government, this court must and does remember that the ox wagon age has passed and forever gone; therefore, we must apply accepted and fundamental rules, which have been long applied by the courts of the country when considering the constitutionality of acts of the Legislature. Some of those rules are as follows:

(1) The courts in a long series of cases have enunciated the general principles that the presumption is in favor of the constitutionality of a statute. It has also been declared that in no doubtful case should the courts pronounce legislation to be contrary to the Constitution. McPherson v. State, 174 Ind. 60, 90 N. E. 610, 31 L. R. A. (N. S.) 188; Missouri, etc., R. Co. of Texas v. May, 194 U. S. 267, 24 S. Ct. 638, 48 L. Ed. 971; 6 R. C. L. 101.

(2) That the courts will resolve every reasonable doubt in favor of the validity of a law. Fletcher v. Peck, 6 Cranch, 87, 130, 3 L. Ed. 162, 176; Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629; Henderson Bridge Co. v. Henderson, 173 U. S. 592, 19 S. Ct. 553, 43 L. Ed. 823; City of Louisville v. Hyatt et al., 2 B. Mon. (41 Ky.) 177, 36 Am. Dec. 594. See 6 R. C. L. 98.

With the foregoing rules and guideposts before us, we undertake to solve the constitutionality of the cosmetic section of the law known as the "Luxury Statute."

It is contended by learned counsel for appellee that the tax being levied on the receipt by the state, the retailer being a citizen of Kentucky, as well as on all re-

tailers in the state of the same article, that such tax becomes a burden on business done in interstate commerce, and therefore is a contravention of the interstate commerce act of the federal government; that it further imposes the tax on all receipts of cosmetics by retailers in Kentucky irrespective of whether interstate or intrastate commerce. This contention is denied by appellant.

In viewing this act, we must consider it as a whole, and not merely in its parts. 12 C. J. p. 707, sec. 55 (5), and cases cited; Rhea v. Newman, 153 Ky. 604, 156 S. W. 154. The intention and purpose of the Legislature in passing it must be ascertained, if it can be done, which is another fundamental rule. Juilliard v. Greenman, 110 U. S. 421, 4 S. Ct. 122, 28 L. Ed. 204; Bank of U. S. v. Deveaux, 5 Cranch, 61, 3 L. Ed. 38; Phillips v. Covington, etc., Bridge Co., 2 Metc. 219; Louisville School Board v. King, 127 Ky. 824, 107 S. W. 247, 32 Ky. Law Rep. 687, 15 L. R. A. (N. S.) 379; 12 C. J. sec. 43 (3) p. 700, and citations.

It is stipulated and agreed that at the Special Session of the General Assembly, referred to, House Bill No. 59 and House Bill No. 61, both revenue measures, originating as required by law in the House, each bill in original form, is made a part of the record. House Bill No. 59 imposed a tax exclusively on the sale of bottled drinks, etc. House Bill No. 61 imposed a tax on those selling and engaged in the business of selling cosmetics, etc.; also, on candy, chewing gum, and other articles. These bills were referred to the proper committee. After due consideration by the committee, House Bill No. 59 was reported to the General Assembly with the amendments now occurring in the act, with the expression of an opinion that the bill should so pass with those amendments, and in that respect it did pass. House Bill No. 61, as originally introduced, passed out of the picture. House Bill No. 59, as amended, is the statute under consideration. As said before, it is denominated a ''Luxury Tax,'' and begins with section 4281d-1 of Carroll's Kentucky Stats., Baldwin's 1936 Revision. Subsection (c) defines the term ''sale'' as follows: ''The term 'sale' shall be defined for purposes of this Act as including all transfers and exchanges of tangible personal property for money or other valuable consideration. The term 'sale' also includes gifts.''

Subsection (f) defines the term "retailer" as follows:

"The term 'retailer' is defined for purposes of this Act as one engaged as a merchant in selling personal property not intended for resale. The word 'retail' and forms thereof shall be interpreted in keeping with this definition."

The word "cosmetics" is defined by subsection (l) as follows:

"The word 'cosmetics' is defined for purposes of this Act as including any preparation manufactured, sold, or distributed for use as a facial or body powder, lotion or cream."

Section 4281d-2 is as follows:

"(a) A state tax is hereby imposed on the sale or use of commodities enumerated in this section in the amounts specified as follows:

"Bottled drinks, one cent (1c) for each five cents (5c) or fractional part thereof of the retail selling price.

"The tax imposed upon the sale of candies and chewing gum shall be collected by the retailer selling such candies and/or chewing gum and shall be accounted for by him to the Department of Revenue and he shall make a monthly report covering such sales on or before the 10th of each month following the month during which this Act becomes effective and shall accompany said report with a certified or cashier's check for the amount of the tax.

"The tax imposed upon the sale of ice cream shall be collected by the person making the first sale of ice cream in the Commonwealth of Kentucky and such person shall account for same to the Department of Revenue and he shall make a monthly report covering such sales on or before the 10th of each month following the month during which this Act becomes effective and shall accompany said report with a certified or cashier's check for the amount of the tax.

"The tax herein imposed upon the receipt of cosmetics in this state by any retailer shall be accounted for by him to the Department of Revenue and he shall make a monthly report covering such

receipts on or before the 10th of each month following the month during which this Act becomes effective and shall accompany said report with a certified or cashier's check for the amount of the tax.

"The Department of Revenue, in lieu of the administrative plan hereinabove set out, may require the affixing of stamps evidencing payment of the taxes on the sale, use and/or receipt of candies, chewing gum, ice cream and/or cosmetics at such a time or times and in such a manner and to such packages or types of packages, as it may deem desirable."

Subsection (f) of section 4281d-2, is as follows:

"A state tax is hereby imposed on the receipt of cosmetics in the State by any Kentucky retailer equal to twenty per cent (20%) of the invoice price plus transportation cost, if any, to the Kentucky retailer."

Then by section 4281d-19, it is provided as follows:

"It is the intent and purpose of this Act to impose the tax levied herein once only upon the sales of the same commodities made taxable hereunder. Any commodity, on account of the sale of which the tax has been paid, shall not occasion payment of a second or other tax regardless of the number of times the commodity may be sold in this State."

It will be observed that section 4281d-2, subsection (a), provides specifically that the tax is imposed on the sale or use of commodities enumerated in that section, which includes bottled drinks, candies, chewing gum, etc. Then, later in the same section, it is provided that the tax herein imposed upon the receipt of cosmetics in the state by any Kentucky retailer, equal to 20 per cent. of the invoice price plus the transportation cost, if any, to the Kentucky retailer, shall be accounted for by him to the Revenue Department. This does not mean the imposition of the tax, while in transportation or before coming to rest in the possession of the retailer. The word "receipt" is not used in a limited sense, but in the sense that it has already been received by the retailer and is now in his use. The word "sale" and use of articles of cosmetics in this section appears in the very beginning of the section, where the expression is used that the tax herein imposed upon the receipt of

the retailer shall be accounted for to the Revenue Department. That word "receipt" presupposes that the cosmetics were now in use and after the sale had been consummated. We have the right to presume that the members of the General Assembly did not intend by the use of the word "receipt" to give it that limited and narrow meaning or its technical meaning of a part of the transportation, or in the sense of shipping receipts or bills of lading, but rather in the sense of ownership after the transportation had come to an end. Webster's International Dictionary, the last and up-to-date edition, defines the word "receipt" as follows:

> "That which is received; that which comes in, in distinction from what is expended, paid out, sent away, and the like."

The word "receipt" is often used in a number of senses, in the sense of "recipe"; in the sense of the acknowledgment of the payment of a debt; in the sense of the payment to a carrier for transportation; and in a number of other senses. However, if the purpose of the entire act, as amended, the intention of the Legislature is to be considered at all, it could not mean that the purpose was to impose a burden upon articles while in transit. As a further evidence of the real purpose, it is provided by section 4281d-19 exactly what the intention of the Legislature was, as above referred to.

That section announces that it was the intention and purpose of the Legislature to impose only a tax on the sales of commodities named in the act. It, therefore, follows that the imposition of the tax against the retailer is not on the act of receiving the cosmetics, but on the sale and use thereof, after the retailer has received them, that constitutes the excise tax. When we apply the intended and correct meaning of the word "receipt" as used in the act, it is conclusive to our minds that the tax of the retailer, referred to, is paid when the articles are in his possession and when the merchant has unlimited control and dominion over the cosmetics. The transportation has ended. It ends at delivery. The primary control of the federal government has come to an end. The taxing power of the state under the statute is in full force and effect. Monamotor Oil Co. v. Johnson, 292 U. S. 86, 54 S. Ct. 575, 78 L. Ed. 1141; E. R. Bacon, Doing Business as Wabash

Elevator, v. People of State of Illinois, 227 U. S. 504, 33 S. Ct. 299, 57 L. Ed. 615; Harold H. Henneford, et al. v. Silas Mason Co., Inc., et al., dec. Mar. 29-37 by U. S. Sup. Ct. The cases cited therein substantiate in many respects our view.

Applying the rules of construction hereinbefore referred to, if there is any reasonable meaning to be given to the act in question, by which the intention of the Legislature makes it constitutional and effective, we should find it.

We have concluded that the tax imposed is not on the articles named in the section, while being transported or while in the control of the taxing power of the federal government, but, on the other hand, attaches after the articles have been received and are at rest in the hands of the retail merchant. Every doubt, if any, should be, and must be, resolved in favor of the constitutionality of the law. Counsel for appellant in a very strong and well-prepared brief has very much assisted the court in reaching this conclusion. We embody a portion of his reasoning in his brief in our opinion:

"At this point, we wish to remark that any retailer on receipt of cosmetics is then and there in possession of the cosmetics; that all possession, control or dominion over the cosmetics has passed from the interstate carrier, and that the cosmetics are not in the hands of the carrier for transportation and not in actual transportation, they are in the hands of the retailer at rest in the State of Kentucky, and are a part of the common property of the Commonwealth and are subject to its tax laws as soon as they have been received. Under the attacked Act no tax attaches to cosmetics until the cosmetics are in the possession of the retailer, and after they are out of the possession of the common carrier, who had previously transported the cosmetics.

"The exercise of the taxing power in connection with the commodity at the point of time when it comes to rest in the State can not be in conflict with the powers of the Federal Government over that commodity while in interstate commerce, because the commodity has passed out of interstate commerce and is out of the jurisdiction of the Fed-

eral Government, so far as commerce is concerned, as soon as delivery is accomplished by the carrier. It can not be a burden upon the transportation of the commodity while in interstate commerce, because the tax does not attach to the activity of the commodity until after its transportation has been completed. The compensation to the common carrier is not taxes, it is only the activity of receiving cosmetics by a retailer of cosmetics to be used in retail trade that is taxed. The cost of transportation is only a small part of the yard stick by which the amount of the tax is measured upon the activity of receipt. In the case of Monamotor Oil Co. v. Johnson, Treasurer of Iowa, et al., 292 U. S. 86, 54 S. Ct. 575, 578, 78 L. Ed. 1141, the United States Supreme Court had before it an attacked tax Act of the State of Iowa. The levy clause in said act is as follows, viz.:

" 'There is hereby levied on all motor vehicle fuel *imported* and used within this state a license fee of one cent per gallon, which shall be in addition to the license fee levied by chapter 251-A1.' [Code Iowa 1931, sec. 4755-b38].

"The word 'imported' is broad enough to include every activity from the beginning to the end of transportation. It does not leave out any activity necessary to transport an article from one state and deliver it to the consignee in another state. They are all there. Then 'imports' was one of the exact words used in the Constitution of the United States in clause 2 of section 10 of article 1 thereof, which provides:

" 'No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports.'

"But Mr. Justice Roberts, in speaking for the Supreme Court of the United States, in construing this tax Act of Iowa, said:

" 'The appellant insists that the tax is a direct tax on motor vehicle fuel imported. The court below concluded that the law laid an excise upon the use of fuel for the propulsion of vehicles on the highways of the state. The state officials have administered the tax on this theory. We think this

the correct view. The levy is not on property but upon a specified use of property. Altitude Oil Co. v. People, 70 Colo. 452, 202 P. 180; Standard Oil Co. v. Brodie, 153 Ark. 114, 239 S. W. 753. It is not laid upon the importer for the privilege of importing (compare Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678; Bowman v. Continental Oil Co., 256 U. S. 642, 647, 41 S. Ct. 606, 65 L. Ed. 1139), but falls on the local use after *interstate commerce has ended.* Compare Sonneborn Bros. v. Cureton, 262 U. S. 506, 43 S. Ct. 643, 67 L. Ed. 1095; Nashville, C. & St. L. Ry. Co. v. Wallace, 288 U. S. 249, 53 S. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191; Edelman v. Boeing Air Transport, Inc., 289 U. S. 249, 53 S. Ct. 591, 77 L. Ed. 1155. *The statute in terms imposes the tax on motor vehicle fuel used or otherwise disposed of in the state. Instead of collecting the tax from the user through its own officers, the state makes the distributor its agent for that purpose.* This is a common and entirely lawful arrangement.'

"The Supreme Court was not blinded by self interest, it had no preconceived prejudice against the Taxation Act. It knew that no state intended to tax property in transportation or while it was being imported from one state into another state. It knew that a license tax, like an excise tax, is a privilege tax; that the only privilege mentioned in the levying clause that the state had a right to tax was 'use of motor vehicle fuel'; *that the activity of importation or transportation would be ended before the fuel could be used.*

"They knew that it is a rule of statutory construction that, if a court has before it a statute, the language of which is susceptible to two constructions, one that it would render the Act constitutional, and the other that it would render it unconstitutional—then, it was the duty of the court, if it could possibly do so, without violence to the language used, to so construe the statute that it would be constitutional. * * *

"The opinion of State of Minnesota v. George Blasius, 290 U. S. 1-12, 54 S. Ct. 34, 36, 78 L. Ed. 131-137, was decided November 6, 1933. The facts in Blasius are as follows:

"Blasius was a commission merchant at St. Paul, Minnesota. There were received by commission merchants at the stock yards from Minnesota and other Western states cattle which were at once sold to other commission merchants who purchased said cattle for immediate delivery in Minnesota and other states for feeding and for slaughter. On April 30, 1929, he purchased eleven head of cattle. These cattle were not purchased for slaughter or to be fed by Blasius, but to at once be sold to his customers in Minnesota and other states and were at once offered on the market for that purpose, and seven of the eleven head were sold on May 1, 1929, and delivered to a nonresident purchaser and were immediately shipped to points outside of Minnesota. The remaining four head were sold and shipped on May 2, 1929, to points outside of Minnesota. Tangible property is annually taxed in Minnesota as of May 1st of each year. The taxing officials assessed on May 1st the eleven head of cattle owned by Blasius. He resisted the tax because he contended that the tax on these cattle constituted a burden on interstate business in which he was engaged, and in contravention to the Commerce Clause of the Federal Constitution (article 1, sec. 8, cl. 3). The local court denied his contention. The Supreme Court of Minnesota sustained his contention and reversed the lower court. But the Supreme Court of the United States granted the state officials certiorari and reversed the Supreme Court of Minnesota. In the course of this opinion Chief Justice Hughes said:

" 'Thus, the states cannot tax interstate commerce, either by laying the tax upon the business which constitutes such commerce or the privilege of engaging in it, or upon the *receipts, as such, derived from it*. Similarily, the states may not tax property in transit in interstate commerce. *But, by reason of a break in the transit, the property may come to rest within a state and become subject to the power of the state to impose a non-discriminatory property tax.*' "

The tax imposed by the act attached after the transportation had fully ended and after the break in transit, and after the property transported had come to

rest within the state, and at the time it was in the use and under the dominion of the retail merchant; therefore it was a subject of taxation by the state.

It is true the tax is estimated on the invoice cost, plus the cost of transportation. However, that estimate is not while in transit, but after transit had ended. The authority over the goods by the federal government had come to an end. The duty of transportation had terminated. In the business of the retail merchant, the invoice price, plus the transportation and with the profit added, would eventually be paid by the consumer, as is done in the sale of ice cream, bottled drinks, chewing gum, etc.

Counsel for appellee relies upon a number of cases which he cites in brief as a basis of their contention. The strongest one that we have observed is Caldwell v. North Carolina, 187 U. S. 622, 23 S. Ct. 229, 47 L. Ed. 336, which involved the constitutionality of an ordinance of the city of Greensboro, N. C. That ordinance imposed a license tax on the business of selling and delivering pictures and picture frames with photographs in the frames which had been ordered from merchants of another state to be delivered in Greensboro, N. C., to the purchaser. Another person not connected with the sale of the picture frames, etc., made delivery to the purchaser. This license tax was declared illegal because it was a burden upon interstate commerce. We have no complaint of this ruling because the license in that case was specifically imposed upon the *delivery* and sale and not on the pictures or frames after they had been received and in the hands of and under the dominion and use of the purchaser, as the cosmetics were in the case at bar.

It must be kept in mind in passing upon the sale, use, and receipt of the cosmetics in this case, that at the time the tax was imposed, the goods had reached their destination, had changed hands, and had become the property of the retail merchant, and were under his care, use, and dominion before the tax is imposed.

We might extend this opinion further and to substantiate our conclusions present other strong and cogent reasons for holding the act constitutional, but we find it unnecessary, as we have come to the conclusion already, for the reasons heretofore given, that the im-

position of the tax in question is not a burden on interstate commerce, nor does it in any way contravene the Federal Constitution, insofar as it affects interstate commerce.

Wherefore, the judgment is reversed for proceedings consistent with this opinion. .

Whole court sitting.

Judges Clay and Stites, dissent.

Dissenting opinion by Judge Stites.

If the tax herein involved is a property tax, it is plainly unconstitutional. Compare Dawson v. Kentucky Distilleries and Warehouse Company, 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638. I do not understand the opinion of the majority even to attempt to justify the statute on this theory. On the contrary, the tax is recognized as an excise, and it is conceded that if its incidence is a part of the interstate transportation, then the tax is invalid on this theory too.

It is sought to sustain the excise by construing the taxable act away from interstate commerce and fixing it somewhere within the interval between receipt by the merchant and sale to the consumer. The difficulty that I have with this reasoning is: (1) That the tax is, in terms, levied on the receipt of the cosmetics by a retailer; and (2) that there is nothing to excise after the goods are received and before they are sold—a tax that falls within this period can be nothing other than a tax on the property itself. It is not contended that appellees are themselves going to use the cosmetics. Cases sustaining an excise on the use of property after the interstate journey is at an end therefore have no application. I have always thought that a tax based on ownership alone was a property tax. The opinion of the majority has not convinced me of my error in this particular. I am authorized to state that Judge Clay concurs in the views here expressed.