# Bowman v. Frost, Commissioner of Welfare.

Feb. 3, 1942.

R. P. Dietzman, Frank A. Ropke, Anna H. Settle and Polk South for appellant.

Hubert Meredith, Attorney General, Wm. F. Neill, Assistant Attorney General, and Chas. Milner for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

This case involves the constitutionality of Chapter 157 of the Acts of the General Assembly of 1940 entitled "An Act to promote the public welfare by providing aid to the needy blind." Section 1 of the Act defines "needy blind" as "a person or persons, who has no vision, or whose vision is so defective as to prevent the performance of ordinary activities for which eyesight is essential, or whose vision because of eye disease will become so defective without corrective or preventive treatment that ordinary and essential activities cannot be performed, and who is unable to provide himself, or themselves, or who does not have otherwise provided for him, or them, a reasonable subsistence compatible with decency and health, and/or is unable to provide himself, or themselves, or have provided for him, or them, specialized services for corrective or preventive treatment for blindness." Section 2 provides that any needy blind person shall be eligible for aid under the act who meets certain requirements as to residence within the state, is not in a public or private institution of a custodial or eleemosynary nature, is not receiving aid under the Old Age Assistance Act or the Aid to Dependent Children Act, and has not voluntarily made an assignment or transfer of property for the purpose of rendering himself eligible for aid as provided for in the act. Section 3 fixes the amount of aid which shall be granted to any needy blind person at a sum sufficient to provide him with a reasonable subsistence compatible with decency and health, or where corrective treatment for blindness is feasible at a sum sufficient for that purpose. Section 3 provides further that aid can be granted only when funds are available to carry out the provisions of the act. Subsequent sections deal with administrative matters. The State Department of Welfare is charged with the administration of the act, but it has taken no steps.

to put the act into operation, and, on the ground that the act is unconsitutional, has refused to grant aid to any needy blind person.

James Burwell Bowman, a blind person, brought this suit against the Commissioner of Welfare under the Declaratory Judgment Act for the purpose of having the constitutionality of the act determined. He stated facts in his petition showing he was eligible for aid under the act, and asked for a declaration of the rights of the parties. The circuit court sustained a demurrer to the petition, and adjudged that Chapter 157 of the Acts of 1940 is unconstitutional, being in violation of Section 3 of the Constitution of Kentucky. The parties to this appeal agree that the sole question presented is whether the act in question violates Section 3 of our Constitution which, so far as it is pertinent to the controversy before us, reads:

> "No grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services."

Appellee concedes that the state can care for the needy blind in institutions provided for that purpose, but it is argued that Section 3 of the Constitution forbids the payment of public funds to any person, "except in consideration of public services." In passing upon the constitutionality of legislative acts, courts are guided by certain well-established rules. One of these rules is that when the power of the Legislature to enact a law is called in question, the court should proceed with the greatest possible caution and should never declare an act invalid until after every doubt has been resolved in its favor. Martin v. J. Bacon & Sons, 268 Ky. 612, 105 S. W. (2d) 569; Duke v. Boyd County, 225 Ky. 112, 7 S. W. (2d) 839; Craig v. O'Rear, 199 Ky. 553, 251 S. W. 828.

An examination of the constitutional debates reveals that the members of the Convention had in mind the powerful and influential and not the unfortunate and helpless members of society when they adopted Section 3 of the Constitution prohibiting the granting of exclusive, separate public emoluments or privileges to any man or set of men except in consideration of public services. If the history of the section is traced to its source, the reason for its adoption as a part of our Bill of Rights is apparent. A similar section has appeared in each of our Con-

stitutions, including the first one adopted in 1792. The Constitution of Virginia contained a similar provision at the time Kentucky became a state. In colonial times it was the practice of the English Crown to place its favorites upon the pension list and grant them other favors at the expense of the public treasury although they had rendered no public services. It was to prevent such abuses that provisions similar to those in Section 3 of our Constitution were placed in the early Constitutions of many states. At the time our last Constitutional Convention met it was the practice of fiscal courts and city councils throughout the state to aid the destitute members of the community with direct grants. This practice was known to the members of the Convention, and had they intended to prohibit that practice and to limit aid to the destitute and helpless to caring for them in institutions provided for that purpose, surely they would have employed language more explicit than that used in Section 3. By Section 364 of the Kentucky Statutes an allowance of $75 per annum is made to each pauper idiot, so adjudged and reported, to be paid out of the state treasury. This law had been enacted long before the present Constitution was adopted, and was in force when the Constitutional Convention met. In 1893 it was re-enacted by the General Assembly. Many members of that General Assembly had been members of the Constitutional Convention, and apparently the thought never occurred to anyone that payments out of the state treasury directly to the committees of pauper idiots contravened the provisions of Section 3 of the Constitution. Care of the poor and those unable to care for themselves has long been recognized as a public duty, and as civilization progressed the care of the state for its dependent classes grew and expanded. Today social services unknown to former generations are being extended to the less fortunate members of society, and are being demanded and obtained as of right. Food and shelter have become the clearly recognized obligation of society to every inhabitant of the state. Various methods have been adopted to fulfill this obligation, including the construction and operation by the state or its subdivisions of asylums for the insane, hospitals for the sick, and poorhouses for the destitute. To sensitive persons confronted with the necessity of accepting public assistance, the typical poorhouse is an object of dread. As organized society becomes more conscious of its obligations to

its dependent members, more humane methods for caring for them are being adopted.

Appellee concedes that the state could erect and equip an institution for the needy blind and care for appellant in such an institution, but insists that it is prohibited by Section 3 of the Constitution from extending aid to him in the form of cash payments. That section read in the light of modern concepts of the state's obligations to its dependent citizens should not be given such a narrow and illiberal construction. It is the duty of the state to provide for poor persons therein who are in need of assistance, and the discharge of such duty is a governmental function and we find no provision of the Constitution circumscribing the power of the Legislature to carry out that function. Section 3 was not intended to affect this power in any respect either as to the right to exercise it or as to the manner in which the assistance should be granted. The appropriation of money for the care of the poor is for a public purpose. Hager v. Kentucky Children's Home Society, 119 Ky. 235, 83 S. W. 605, 67 L. R. A. 815. Appellee cites a number of cases of which Barker v. Crum, 177 Ky. 637, 198 S. W. 211, L. R. A. 1918F, 673, is typical and upon which he chiefly relies. The Barker case is clearly distinguishable from the case before us. There an act of the Legislature provided for free tuition and board in the University of Kentucky to a certain number of students from each county in the state. Applicants were required to submit to competitive examination, but the selection of those who were to receive free tuition and board was left to the uncontrolled discretion of the county superintendent, and the act was declared in violation of Section 3 of our Constitution because all of a class were not treated alike but a few, arbitrarily selected, were given money from the state treasury while others similarly situated were required to pay their tuition fees and other expenses.

The act extending aid to the needy blind creates a special class of the poor, but, undoubtedly, there is a reasonable basis for such a classification. Orphan Society of Lexington v. Fayette County, 6 Bush 413; Jefferson County v. Jefferson County Fiscal Court, 220 Ky. 678, 299 S. W. 209; Hager v. Kentucky Children's Home Society, 119 Ky. 235, 83 S. W. 605, 67 L. R. A. 815. Section 3 of the Constitution applies to cases where no duty rests upon the state to reward the recipient, but not to cases

where payments are made in discharge of an inherent duty. The aid provided for in the act before us is not a mere gift or bounty, but is a payment by the state in discharge of a duty to a recipient who is entitled to it as of right, having established his eligibility under the act. It is true his legal right results solely from statute, since there was no common-law obligation on the state to care for the poor, but when the state undertakes by statute to assume the obligation, his right attaches. In 21 R. C. L. 701, it is said:

"The care of the state for its dependent classes is considered by all enlightened people as a measure of its civilization, and the care of the poor is generally recognized as among the unquestioned objects of public duty, but in spite of this, the duty under the common law was purely moral and not legal. There is therefore no legal obligation at common law on any of the instrumentalities of government to furnish relief to paupers. The obligation to support such persons results only from statute. The reason for this seeming barbarity of the common law was that matters of charity were thought more appropriate for the church."

Relief by the state of the needy and afflicted who are unable to care for themselves is an accepted exercise of valid authority under the police power in promotion of the general welfare, and when the Legislature provides for the performance of this governmental function constitutional provisions should be construed, if possible, so as not to interfere with its proper exercise. In Commonwealth v. Liveright, 308 Pa. 35, 161 A. 697, 710, an act making large appropriations for care of the poor was attacked on the ground, among others, that it violated Article 3, Section 18, of the Pennsylvania Constitution, P. S., which provides:

"No appropriations, except for pensions or gratuities for military services, shall be made for charitable, educational or benevolent purposes, to any person or community, nor to any denominational or sectarian institution, corporation or association."

The Supreme Court of Pennsylvania held the act valid, and in the course of its opinion said:

"Considering the subject of this case, we find Act 7-E makes an appropriation for the relief of the

poor. We again hold that the support of the poor—meaning such persons as have been understood as coming within that class ever since the organization of the government, persons who are without means of support, the same persons stated in the Talbot Bill, Act 7-E—is and has always been a direct charge on the body politic for its own preservation and protection; and that as such, in the light of an expense, stands exactly in the same position as the preservation of law and order. The expenditure of money by the state for such purposes is in performance of a governmental function or duty, and is not controlled by the constitutional provision, if the purpose is to supply food and shelter to the. poor, including those who are destitute because of enforced unemployment, provided only that the money be not administered through forbidden channels.'' Cf. Proffitt v. Christian County, 370 Ill. 530, 19 N. E. (2d) 345; State v. Edmondson, 89 Ohio St. 351, 106 N. E. 41.

Applying the rules established for the guidance of courts in passing on the constitutionality of legislative acts, we conclude that Chapter 157 of the Acts of 1940 is not in contravention of Section 3 of the Constitution, and is valid.

Some point is made of the failure of the Legislature to make any appropriation, or a sufficient appropriation, to carry out the purposes of the act. Of course, payments under the act cannot be made unless money has been appropriated and is available for the purposes specified therein, but failure to appropriate funds to carry out the purposes of the act does not render the act unconstitutional, but simply postpones its operation until funds are provided. State Board of Education v. Kenney, 230 Ky. 287, 18 S. W. (2d) 1114.

The judgment is reversed, with directions to overrule the demurrer to plaintiff's petition.

Whole Court sitting.