Patricia BLEVINS, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2013–CA–000293–DG.

Court of Appeals of Kentucky.

June 20, 2014.

Clay William McGuffin, Assistant Public Advocate, Morehead, KY, for appellant.

Stephen G. Geurin, Assistant Rowan County Attorney, Morehead, KY, for appellee.

Before CLAYTON, COMBS and STUMBO, Judges.

*OPINION*

STUMBO, Judge:

Patricia Blevins appeals from an Order of the Rowan Circuit Court affirming an Order of the Rowan District Court accepting her conditional plea of guilty to two counts of Cruelty to Animals, Second–Degree, and to a violation of the Rowan County Kennel Ordinance. Blevins contends that the district court improperly ordered restitution in favor of the American Society to Prevent Cruelty to Animals ("ASPCA") in the amount of $338,810.63, and improperly rejected her argument that the kennel ordinance is unconstitutional. We conclude that the ASPCA is not a "victim" under the statutory scheme, and accordingly Reverse in Part as to the imposition of restitution. The Order is in all other respects Affirmed.

The facts are not in controversy. On March 1, 2012, Blevins entered a conditional guilty plea in Rowan District Court to two counts of Cruelty to Animals, Second–Degree, and one violation of a Rowan County Kennel Ordinance. The plea followed an investigation by local authorities which found approximately 118 dogs on Blevins' property in Rowan County, Kentucky. The record reveals that the animals were housed in inhumane conditions, and had not received adequate food, water, shelter and medical care. Dogs were found in small cages overflowing with feces and urine, and many dogs had serious health issues including dehydration, flea infestation and severe hair matting.

By way of an Order rendered March 29, 2012, the Rowan District Court accepted

the plea and, among other things, ordered restitution to the ASPCA. In support of the order of restitution, the court opined that but for Blevins' criminal acts, the involvement of the ASPCA would not have been necessary. The court noted that due to the large number of dogs involved, Rowan County government and the other relevant parties had no other option but to contact the ASPCA and request their assistance. The restitution order was based on the ASPCA's accounting of its costs, which included $51,000 in air fare, $21,000 for car rental, $67,000 in hotel costs, and $50,000 for veterinary fees. The record indicates that the ASPCA told the Commonwealth that its services would be provided at no charge to the Commonwealth.

Blevins appealed the Order as a matter of right to the Rowan Circuit Court. She raised a number of issues therein, including the constitutionality of the Cruelty to Animals statute (Kentucky Revised Statutes [KRS] 525.130) and the local ordinance, the validity of the search which led to the discovery of the dogs, and whether the ASPCA was entitled to restitution. The circuit court affirmed the Order on appeal in all respects, and this discretionary appeal followed.

Blevins now argues that the Rowan Circuit Court erred in affirming the Order of the Rowan District Court. She first contends that the district court erred when it ordered restitution in favor of the ASPCA, and that the circuit court improperly failed to so rule. Specifically, Blevins maintains that the ASPCA is not entitled to restitution because it is not a "victim" under the restitution statute, KRS 532.350(1). Blevins notes that the ASPCA is a nonprofit organization that solicits and receives donations for the purpose of providing precisely the kind of assistance it provided to the Rowan County government, and that this assistance was given voluntarily and

without any obligation of repayment. She argues that Rowan County was under no obligation to engage the ASPCA, but did so voluntarily and in large measure based on its own inability to manage the number of dogs involved. The focus of her argument on this issue is that the ASPCA cannot reasonably be characterized as a victim under the statutory scheme, and that the Rowan Circuit Court erred in failing to so rule.

The imposition of restitution is provided for in KRS 533.030(3), which states,

> When imposing a sentence of probation or conditional discharge in a case where a victim of a crime has suffered monetary damage as a result of the crime due to his property having been converted, stolen, or unlawfully obtained, or its value substantially decreased as a result of the crime, or where the victim suffered actual medical expenses, direct out-of-pocket losses, or loss of earning as a direct result of the crime, or where the victim incurred expenses in relocating for the purpose of the victim's safety or the safety of a member of the victim's household, or if as a direct result of the crime the victim incurred medical expenses that were paid by the Cabinet for Health and Family Services, the Crime Victims Compensation Board, or any other governmental entity, the court shall order the defendant to make restitution in addition to any other penalty provided for the commission of the offense.

KRS 532.350(1) provides that restitution is "any form of compensation paid by a convicted person *to a victim* for counseling, medical expenses, lost wages due to injury, or property damage and other expenses suffered by a victim because of a criminal act." (Emphasis added). It is noteworthy that both provisions expressly limit the award of restitution to "a victim."

▮ The question before us, then, is whether the ASPCA is properly characterized as a victim for purposes of KRS Chapters 532 and 533. We conclude that it is not. Though the legislature did not define what constitutes a victim for purposes of ordering restitution, it is clear from KRS Chapter 532 and 533 that "victim" in this context is one who is *directly* harmed by the criminal conduct for which the defendant has pled or been found guilty. Under the statutory scheme, this includes those who have had their property converted, stolen or unlawfully obtained, and those who have suffered "actual" medical expenses, loss of earning power as a "direct" result of the crime, and "direct" out-of-pocket expenses. KRS 533.030.

In the matter at bar, the ASPCA did not suffer direct pecuniary damages as a result of Blevins' criminal activity, but *voluntarily* accepted Rowan County's request for assistance. Because the ASPCA could have declined to voluntarily participate in the recovery of Blevins' dogs, we cannot conclude that it is a victim for purposes of KRS Chapters 532 and 533. This conclusion comports with federal statutory law defining a victim as "a person *directly and proximately harmed* as a result of the commission of an offense," 18 USCA § 3663A, and extra-jurisdictional state case law holding that a victim is one who is "*directly injured* . . . as the result of the defendant's criminal conduct[.]" *State v. Straub,* 153 Idaho 882, 292 P.3d 273, 279 (2013). (Emphasis added). Additionally, we find persuasive *Vaughn v. Commonwealth,* 371 S.W.3d 784, 786 (Ky.App.2012), wherein a panel of this Court determined that the Commonwealth of Kentucky, which incurred extradition costs it sought to recover through restitution, "simply was not a victim who suffered a loss as a result of criminal acts[.]"

In sum, though it is uncontroverted the ASPCA voluntarily incurred substantial costs in assisting the Rowan County government in the recovery and treatment of Blevins' dogs, we conclude that the Rowan Circuit Court erred in sustaining the Rowan District Court's characterization of the ASPCA as a victim for purposes of the restitution statutes. We hold as moot Blevins' contention that the Rowan District Court exceeded the scope of its jurisdiction by awarding restitution in excess of $100,000.

Blevins also argues that the Rowan County Kennel Ordinance, as set forth in the Rowan County Code of Ordinances (RCCO), is an unconstitutional delegation of absolute and arbitrary power, and that the Rowan Circuit Court erred in failing to so rule. The substance of Blevins' argument on this issue is that the ordinance grants so much discretion to the county authorities that it is violative of the Kentucky Constitution's prohibition against "[a]bsolute and arbitrary power over the lives, liberty and property of freemen[.]" Kentucky Constitution, Section 2. Blevins notes that the Kennel Ordinance provides standards for granting or denying a license for kennels closer than 200 feet from a residence, but also grants to the judge executive or his designee the ability to increase or decrease the distance "as the health and welfare concerns of each individual application may require." RCCO Section 93.07. Because this Kennel Ordinance provision is discretionary, Blevins contends that it is overly broad and violative of the "absolute and arbitrary power" prohibition of the Kentucky Constitution.

▮ The Rowan Fiscal Court's authority to enact RCCO Section 93.07 derives from KRS 67.083(3), which states that,

> The fiscal court shall have the power to carry out governmental functions necessary for the operation of the county.

Except as otherwise provided by statute or the Kentucky Constitution, the fiscal court of any county may enact ordinances, issue regulations, levy taxes, issue bonds, appropriate funds, and employ personnel in performance of the following public functions:

(a) Control of animals, and abatement of public nuisances[.]

*See also* KRS 258.087. In examining legislative action, we are constrained by the principle that such action "should be held valid unless it clearly offends the limitations and prohibitions of the constitution[.]" *Johnson v. Commonwealth ex rel. Meredith*, 291 Ky. 829, 165 S.W.2d 820, 823 (1942). In applying this principle, all doubts should be resolved in favor of finding the action constitutional. *Bowman v. Frost*, 289 Ky. 826, 158 S.W.2d 945 (1942). We conclude that because municipal governing bodies such as fiscal courts derive their authority from the Commonwealth's authority to self-govern, the presumption of constitutionality is applicable equally to acts of the legislature as well as those of municipal governing bodies.

■ The question for our consideration is whether Blevins has overcome the presumption that RCCO Section 93.07 is constitutional. We conclude that she has not. The discretion granted to the judge executive in RCCO Section 93.07 is reasonably related to the Rowan Fiscal Court's statutory authority to control animals and abate public nuisances. Blevins has not demonstrated that RCCO Section 93.07 is violative of the constitutional prohibition against absolute and arbitrary power. We find no error.

■ Lastly, Blevins argues that the search and seizure of her property exceeded the permissible scope of the warrant because it was conducted by civilians who were not authorized by the warrant and who displaced law enforcement personnel.

She contends that when a warrant to search her property was served by Rowan County Sheriff's Deputy Delmer Hall, he was accompanied by Rowan County Dog Warden Nick Brown and Rowan County Fiscal Court employee Tracy Hamilton. In her view, because Brown and Hamilton were present at the search, and assisted or conducted the search of the kennel in conjunction with Deputy Hall, the search exceeded the scope of the warrant and the evidence obtained therefrom should have been suppressed.

The record reveals that Deputy Hall served the warrant and that he searched the house and buildings on the property. He testified that he saw the dogs and the conditions that they were living under, including inside a mobile home that had been converted into a dog kennel, which smelled of feces and urine. Deputy Hall did not personally remove any of the animals, but stood between the house and carport where he could see Brown, Hamilton and Jan White Dacci who arrived to assist in evaluating the site and removing the dogs.

We have no basis for concluding that the warrant was not properly executed, nor that the presence of Brown, Hamilton and Dacci was improper or otherwise violative of the scope of the warrant. KRS 258.215(1) and RCCO Section 93.05 provide that seized dogs shall be turned over to an animal shelter or humane society. The Rowan County Dog Pound is an animal shelter as defined by KRS 258.095(13). As a practical matter, and given the number of dogs involved, Deputy Hall apparently required the assistance of Warden Brown, along with Hamilton and Dacci, in order to assess the site and determine the dogs' condition.

Additionally, KRS 436.605 grants police powers, though not the authority to arrest,

to animal control officers and agents of humane societies employed or contracted by local government to enforce statutory provisions relating to animal safety and the prevention of animal cruelty. KRS 436.605 states:

(1) Animal control officers and officers and agents of humane societies who are employed by, appointed by, or have contracted with a city, county, urban-county, charter county, or consolidated local government to provide animal sheltering or animal control services shall have the powers of peace officers, except for the power of arrest, for the purpose of enforcing the provisions of the Kentucky Revised Statutes relating to cruelty, mistreatment, or torture of animals, provided they possess the qualifications required under KRS 61.300.

(2) When any peace officer, animal control officer, or any officer or agent of any society or association for the prevention of cruelty to animals duly incorporated under the laws of this Commonwealth who is employed by, appointed by, or has contracted with a city, county, urban-county, charter county, or consolidated local government to provide animal sheltering or animal control services makes an oath before any judge of a District Court that he has reasons to believe or does believe that an act of cruelty, mistreatment, or torture of animals is being committed in a building, barn, or other enclosure, the judge shall issue a search warrant directed to the peace officer, animal control officer, or officer or agent of the society or association for the prevention of cruelty to animals to search the premises. If a peace officer finds that an act of cruelty, mistreatment, or torture of animals is being perpetrated, the offender or offenders shall be immediately arrested by the peace officer and brought before the court for trial. If an animal control officer or an officer or agent of a society or association for the prevention of cruelty to animals finds that an act of cruelty, mistreatment, or torture of animals is being perpetrated, the officer or agent shall summon a peace officer to arrest the offender or offenders and bring them before the court for trial.

It is unclear from the record whether Warden Brown, Hamilton and Dacci fall within the purview of KRS 436.605, or whether they possessed "the qualifications required under KRS 61.300," i.e., the requirements for nonelective peace officers and deputies. *Arguendo,* even if they were not so qualified, KRS 436.605 evinces a strong public policy of deterring and correcting acts of cruelty, mistreatment or torture of animals. We find persuasive the Commonwealth's contention that given the totality of the circumstances, the presence of civilian personnel was not gratuitous, it was reasonably necessary based on the scope of the warrant and the large number of animals present, and it did not form a basis for excluding the resultant evidence.

For the foregoing reasons, we Reverse the imposition of restitution, and in all other respects Affirm the Order on Appeal of the Rowan Circuit Court.

ALL CONCUR.