**Jonathan BENTLEY, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee**

**NO. 2015-CA-000806-MR**

Court of Appeals of Kentucky.

RENDERED: JULY 29, 2016; 10:00 A.M.

---

BRIEF FOR APPELLANT: Steven J. Buck, Assistant Public Advocate, Frankfort, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, J. Hays Lawson, Assistant Attorney General, Frankfort, Kentucky

BEFORE: ACREE, J. LAMBERT, AND THOMPSON, JUDGES.

## OPINION

J. LAMBERT, JUDGE:

Jonathan Bentley appeals from the Letcher Circuit Court's judgment and sentence entered pursuant to a conditional guilty plea, ordering him to pay restitution to the victims and to the victims' insurance provider. After careful review, we affirm in part and reverse in part.

Bentley was charged with complicity to receiving stolen property valued at $10,000.00 or more. As part of his plea agreement, Bentley was sentenced to five-years' imprisonment, which was probated for five years, and was ordered by the trial court to pay restitution of $1,000.00 to the victims of his crime and $11,000.00 to Kentucky Farm Bureau Insurance Company (Kentucky Farm Bureau), the victims' insurer.

The record indicates that on November 5, 2012, Bentley, along with two other defendants, knowingly had in his possession stolen firearms belonging to Travis and Hillary Meade. Most of the stolen property was recovered, and Kentucky Farm Bureau paid the Meades $12,000.00 under a homeowner's policy, with $1,000.00 amounting to the Meades' deductible under the policy. The plea offered by the Commonwealth indicated that Bentley would pay the Meades restitution based on the $1,000.00 deductible and Kentucky Farm Bureau restitution amounting to the $11,000.00 it paid under the policy. As stated above, Bentley accepted the plea conditioned on the right to appeal the portion of the judgment ordering him to pay restitution to Kentucky Farm Bureau, and the trial court entered its judgment and sentence on April 14, 2015. This appeal now follows.

On appeal, Bentley's only argument is that the trial court erred when it ordered him to pay restitution to an insurance company as part of his plea agreement. In support of this, Bentley argues that the trial court improperly relied on *Commonwealth v. Morseman*, 379 S.W.3d 144 (Ky.

2012), in determining that restitution to Kentucky Farm Bureau was proper. Bentley contends that under Kentucky Revised Statutes (KRS) 532.032(1), 533.030(3), and 431.200, restitution is to be limited to a victim's out-of-pocket expenses, and Kentucky Farm Bureau could pursue reimbursement through civil litigation against him.

█ We review a trial court's findings with regard to restitution for an abuse of discretion. *See Morseman, supra,* at 148. The test for abuse of discretion is "whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

Bentley argues that the trial court should only have ordered him to pay restitution to the Meades and not to Kentucky Farm Bureau, because Kentucky Farm Bureau is not the victim of his crime and would have a subrogation claim against any money the Meades received. In support of this, Bentley argues that the trial court overlooked the Attorney General's opinion in Ky. OAG 94-57 (1994), in its judgment ordering restitution. Therein, Attorney General Chris Gorman addressed the question of whether a trial court could order a person convicted of a crime to pay restitution to an insurer who has previously compensated a crime victim. Citing *Clayborn v. Commonwealth,* 701 S.W.2d 413, 415 (Ky.App.1985), AG Gorman noted that KRS 533.030(3) limits restitution to the victim's actual out-of-pocket expenses. AG Gorman further noted that in *Clayborn,* this Court reasoned that to the extent that a victim has been compensated for a loss by insurance, there is no statutory authority to impose restitution as a condition of probation. The Opinion further stated:

> Insurers do not fall within the category of victims or aggrieved persons. The

insurer does not make its payment or settlement by virtue of being directly threatened or injured by the criminal defendant. Thus, an insurance payment or settlement is not a direct loss or injury as a result of criminal activity. It is an indirect "loss" resulting from a contractual arrangement between the victim and the insurer. A review of the statutes and case law indicates that the legislature did not intend for KRS 431.200 or KRS 533.030 to provide any direct relief to insurers. Consequently, trial courts are not authorized to order restitution or reparation directly to an insurer as part of a criminal proceeding. As noted, the victim and the victim's insurer retain the right to proceed against the defendant in a civil action. Further, any restitution or reparation of property to the victim under KRS 431.200 would be subject to any subrogation agreement between the victim and the insurer. However, both of those matters would be independent of the criminal proceeding.

Bentley acknowledges that Opinions of the Attorney General are not binding on courts, but are instead considered to be highly persuasive and are accorded great weight. *See Palmer v. Driggers,* 60 S.W.3d 591, 596 (Ky.App.2001).

The Commonwealth argues that the trial court did not abuse its discretion by ordering Bentley to pay restitution to Kentucky Farm Bureau. In support of its argument, the Commonwealth argues that an insurance company is a victim under KRS 533.030. Further, the Commonwealth argues that restitution provisions are remedial in nature and should be construed liberally because of their remedial purpose, citing *Morseman,* 379 S.W.3d at 148. The Commonwealth does not address in its brief to this Court whether or not the AG's opinion in Ky. OAG 94-57 (1994), applies

and concedes that there is conflicting law with regard to whether an entity such as an insurance company is a victim. Instead, the Commonwealth cites to *Blevins v. Commonwealth*, 435 S.W.3d 637, 640 (Ky. App.2014), and cases from other jurisdictions as persuasive authority for this Court to conclude that an insurance company can be a victim.

We agree with the Commonwealth that the law is somewhat confusing on the particular issue of whether an insurance company is a victim under KRS 533.030(3). That statute provides:

> When imposing a sentence of probation or conditional discharge in a case where a victim of a crime has suffered monetary damage as a result of the crime due to his property having been converted, stolen, or unlawfully obtained, or its value substantially decreased as a result of the crime, or where the victim suffered actual medical expenses, direct out-of-pocket losses, or loss of earning as a direct result of the crime, or where the victim incurred expenses in relocating for the purpose of the victim's safety or the safety of a member of the victim's household, or if as a direct result of the crime the victim incurred medical expenses that were paid by the Cabinet for Health and Family Services, the Crime Victims Compensation Board, or any other governmental entity, the court shall order the defendant to make restitution in addition to any other penalty provided for the commission of the offense. Payment of restitution to the victim shall have priority over payment of restitution to any government agency. Restitution shall be ordered in the full amount of the damages, unless the damages exceed one hundred thousand dollars ($100,000) or twice the amount of the gain from the commission of the offense, whichever is greater, in which case the higher of these two (2) amounts shall be awarded. . . .

Looking at the Kentucky Supreme Court's analysis in *Morseman* provides some guidance. There, the Defendant's home was destroyed by fire and the insurance company initially ruled out foul play during its investigation of the fire. *Morseman*, 379 S.W.3d at 145. During the investigation, Morseman gave a sworn statement to Amica Mutual Insurance Company (Amica) that he did not have a rental storage unit; however the police investigation revealed that Morseman had rented a storage unit less than two weeks before the fire. *Id.* During a search of the storage unit, police discovered personal property that Morseman had reported as destroyed during the fire. *Id.* at 145–46. Subsequently, authorities confirmed that arson caused the fire, and a grand jury indicted Morseman for second-degree arson by complicity and fraudulent insurance acts by complicity over $300.00. *Id.*

Morseman pleaded guilty to the insurance fraud charge and was ordered to pay restitution to the insurance company. *Id.* at 146–147. The restitution was broken up into three types: Type A (dwelling costs paid to Countrywide Mortgage), Type C (contents/personal property), and Type D (alternate housing/living expenses). At his sentencing hearing, Morseman argued that he should only have to pay the Type C restitution to Amica, because those were the only damages suffered by Amica as a result of the criminal act for which he pled guilty, insurance fraud. *Id.* at 147. The Supreme Court of Kentucky held that Morseman agreed to the restitution condition as part of his plea agreement and therefore was bound by the terms of the agreement. *Id.* at 152.

Bentley argues that the facts of the instant case are different, because Morseman's plea was not conditioned upon his

right to appeal whether the court could order him to pay restitution to an insurance company. Bentley argues that even if Morseman's plea had been conditioned upon his right to appeal, the argument in that case was that the insurance company was the victim of the actual insurance fraud. Bentley contends that in the instant case, the Meades, and not Kentucky Farm Bureau, are the victims of his crimes.

■ We agree with Bentley that *Morseman* can be distinguished from the instant case. Kentucky Farm Bureau made payments to the Meades under a contract of insurance and was not a victim of Bentley's crimes.

This Court also considered the notion of what a victim is under KRS 533.030 in *Blevins v. Commonwealth*, 435 S.W.3d 637 (Ky.App.2014). There, Blevins entered a conditional guilty plea to two counts of animal cruelty and to a violation of a kennel ordinance. The trial court ordered Blevins to pay restitution to the American Society to Prevent Cruelty to Animals (ASPCA), who had made payments to Rowan County, reasoning that but for Blevins' conduct, the ASPCA would not have been involved or had to make any payments. Blevins appealed, and this Court reasoned that the ASPCA was not a victim within the meaning of KRS 532.030(3). We stated:

> The question before us, then, is whether the ASPCA is properly characterized as a victim for purposes of KRS Chapters 532 and 533. We conclude that it is not. Though the legislature did not define what constitutes a victim for purposes of ordering restitution, it is clear from KRS Chapter 532 and 533 that "victim" in this context is one who is *directly* harmed by the criminal conduct for which the defendant has pled or been found guilty. Under the statutory scheme, this includes those who have

had their property converted, stolen or unlawfully obtained, and those who have suffered "actual" medical expenses, loss of earning power as a "direct" result of the crime, and "direct" out-of-pocket expenses. KRS 533.030.

In the matter at bar, the ASPCA did not suffer direct pecuniary damages as a result of Blevins' criminal activity, but *voluntarily* accepted Rowan County's request for assistance. Because the ASPCA could have declined to voluntarily participate in the recovery of Blevins' dogs, we cannot conclude that it is a victim for purposes of KRS Chapters 532 and 533. This conclusion comports with federal statutory law defining a victim as "a person *directly and proximately harmed* as a result of the commission of an offense," 18 USCA § 3663A, and extra-jurisdictional state case law holding that a victim is one who is *"directly injured ... as the result of* the defendant's criminal conduct [.]" *State v. Straub*, 153 Idaho 882, 292 P.3d 273, 279 (2013). (Emphasis added). Additionally, we find persuasive *Vaughn v. Commonwealth*, 371 S.W.3d 784, 786 (Ky.App.2012), wherein a panel of this Court determined that the Commonwealth of Kentucky, which incurred extradition costs it sought to recover through restitution, "simply was not a victim who suffered a loss as a result of criminal acts[.]"

In sum, though it is uncontroverted the ASPCA voluntarily incurred substantial costs in assisting the Rowan County government in the recovery and treatment of Blevins' dogs, we conclude that the Rowan Circuit Court erred in sustaining the Rowan District Court's characterization of the ASPCA as a victim for purposes of the restitution statutes. We hold as moot Blevins' contention that the Rowan District Court exceeded the

scope of its jurisdiction by awarding restitution in excess of $100,000.

*Id.* at 640 (emphasis in original). Similarly to the ASPCA in *Blevins*, Kentucky Farm Bureau did not suffer "direct" out-of-pocket expenses as a result of Bentley's crimes and instead paid damages under a contract of insurance. While Amica was a victim and suffered direct expenses as a result of Morseman's conduct in *Morseman*, Kentucky Farm Bureau was not the victim in the instant case. Further, as explained in Attorney General Gorman's opinion, the Meades only actual out-of-pocket expense was the deductible it paid under the insurance policy, which amounted to $1,000.00.

Accordingly, we reverse the portion of the Letcher Circuit Court's April 14, 2015, judgment and sentence ordering Bentley to pay restitution to Kentucky Farm Bureau in the amount of $11,000.00. We affirm the portion ordering Bentley to pay restitution to the Meades in the amount of $1,000.00.

ALL CONCUR.