## Clay, Insurance Commissioner v. Dixie Fire Insurance Company.

(Decided February 4, 1916.)

### Appeal from Franklin Circuit Court.

Statutes—Constitutional Law—Foreign Insurance Companies—
Taxation—Regulation—Section 637, Kentucky Statutes—Validity.
—Section 637, Kentucky Statutes, providing that when, by the
laws of any other State, any taxes, fines, penalties, deposits of
money, or of securities or other obligations, prohibitions or re-
quirements, are imposed upon insurance companies organized or
incorporated under the laws of this State and transacting business
in such other State, greater than those imposed upon similar com-
panies by the laws of this State, the same taxes, fines, penalties,
deposits, examinations, obligations and requirements shall be
imposed upon all insurance companies doing business in this State
which are organized under the laws of such State, is not uncon-
stitutional because it violates section 60 of the Constitution, pro-
viding, with certain immaterial exceptions, that no law shall be
enacted to take effect upon the approval of any other authority
than the General Assembly, or contravenes sections 171, 180 and
181 of the Constitution with respect to uniformity of taxation.

JAMES GARNETT, Attorney General, and CHARLES H. MOR-
RIS, Assistant Attorney General, for appellant.

LEWIS APPERSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Reversing.

This appeal presents for determination the constitu-
tionality of Section 637 of the Kentucky Statutes, in so
far as it imposes upon foreign insurance companies the
same license taxes imposed by the laws of their domicile.

The statute is as follows:

"When, by the laws of any other State, any taxes,
fines, penalties, deposits of money or of securities or
other obligations, prohibitions or requirements, are im-
posed upon insurance companies organized or incorpor-
ated under any general or special law of this State, and
transacting business in such other State, or upon the
agents of such insurance company, greater than those
imposed upon similar companies by the laws of this
State, or when such laws of other States shall require
insurance companies of this Commonwealth to deposit
money or security for the benefit or protection of citi-

zens of such other States, or when the laws of any other State, or the officers thereof, shall prohibit companies of this Commonwealth from transacting business in said State without a special examination of said companies, or a computation of their liabilities by the officers of said State, the same taxes, fines, penalties, deposits, examinations, obligations and requirements shall be imposed upon all insurance companies doing business in this State, which are incorporated or organized under the laws of such State, and upon their agents.''

The question arises in the following way: The Dixie Fire Insurance Company is a North Carolina corporation. That State imposes on foreign insurance companies doing business therein a license tax or fee of $200.00 per year. The Insurance Commissioner of this State demanded of the Dixie Fire Insurance Company the same license tax. This action was brought to enjoin its collection. The company was awarded the relief asked and the Insurance Commissioner appeals.

In granting the injunction the trial court followed the ruling of this court in the case of Western & Southern Life Insurance Company v. Commonwealth, 133 Ky., 292, 117 S. W., 376, where it was held that Section 637 of the Kentucky Statutes, *supra*, with respect to the imposition of taxes, was violative of Section 60 of the Constitution, providing that no law shall be enacted to take effect upon the approval of any other authority than the General Assembly, and Sections 171, 180 and 181 with reference to uniformity of taxation.

In view of its importance, we deem it necessary to reconsider the question. It is not improper to say at the outset that it is a settled principle of constitutional law that every statute should be upheld and enforced unless it is clearly repugnant to or inconsistent with some provision of the State or Federal Constitution. In case of doubt, it is the duty of the courts to resolve all doubts in favor of the statute and uphold its constitutionality, if it can be done by any fair construction. Dwiggins Wire Fence Co. v. Patterson, 166 Ky., 278, 179 S. W., 224; Board of Education of Louisville v. Sea, 167 Ky., 772.

With these general rules in mind, let us proceed to the consideration of the grounds on which the constitutionality of the statute in question is attacked:

1. Is the act in question violative of Section 60 of the Constitution, which provides that, with certain im-

material exceptions, no law shall be enacted to take effect upon the approval of any other authority than the General Assembly? It is argued that the statute is made to depend upon the enactments of foreign States and, therefore, becomes effective only by virtue of their authority. In the recent case of Commonwealth v. Goldburg, 167 Ky., 96, 180 S. W., 68, we had occasion to consider the constitutionality of Sections 1279 and 1279a, Kentucky Statutes, with reference to branded bottles, etc. The point was made that the statute violated section 60 of the Constitution, *supra*, because it took effect only on the approval of such persons as wish to register and publish their marks and devices. In discussing this phase of the question the court said:

"We think the argument of counsel that the statute under consideration takes effect only on the approval of such persons as wish to register and publish their marks and devices, is based on an entire misconception of the law. When this enactment came from the hands of the Legislature it was a complete statute, not depending for its approval or disapproval on any person or set of persons. But, like many other statutes, it operates on conditions and becomes effective only when the conditions described in the statute exist. For example, this law can be made available only by persons who have thought proper to register and publish their marks or brands. If they do not choose to do this, then the conditions upon which the law becomes operative do not arise. The statutes contain a great many laws that become effective only when the conditions described in the statute exist; but, of course, this does not mean that they "take effect upon the approval of any other authority than the General Assembly." To illustrate, a statute making it an offense to sell personal property on which there is at the time a mortgage of record, becomes operative only when the mortgagee puts his mortgage to record. If he chooses not to record it, then the statute does not apply. We have also a statute making it an offense to sell branded timber without the consent of the owner, and whether this statute becomes operative or not depends on whether the timber has been branded by the owner. While these and many other statutes come into effect only when certain described conditions arise, they are not, in the meaning of the Constitution, dependent upon the approval or disapproval of any other authority than

that of the General Assembly. They merely lie dormant until called into active force by the existence of the conditions upon which they were intended to operate."

In discussing a similar act, the Supreme Court of Illinois, in the case of The Home Insurance Company v. Swigert, 104 Ill., 653, said:

"Who has ever doubted the validity of that portion of our statute which declares that deeds executed without the State may be acknowledged before anyone authorized to take such acknowledgments, by the laws of the State or country in which they are made? Or who has ever questioned the constitutionality of that provision of our statute which makes all wills and testaments made in a foreign State or country binding and valid here, if executed and proven agreeably to the laws and usages of such foreign State or country, although not in accordance with our general law on the subject? And yet, in either of these cases, there is just as much reason for claiming that our Legislature has abdicated its legislative functions, and attempted to delegate its constitutional and legitimate powers to a foreign State or country, as there is that it has done, or attempted to do so, in the present case."

In the case of State v. Parker, 26 Vt., 357, Chief Justice Redfield, speaking for the Court, said:

"One may find any number of cases in the legislation of Congress, where statutes have been made dependent upon the shifting character of the revenue laws, or the navigation laws, or commercial rules, edicts, or restrictions of other countries. In some, perhaps, these laws are made by representative bodies, or it may be by the people of these States, and in others by the lords of the treasury or the board of trade, or by the proclamation of the sovereign; and in all these cases no question can be made of the perfect legality of our acts of Congress being made dependent upon such contingencies. It is in fact the only possible mode of meeting them, unless Congress is kept constantly in session. The same is true of acts of Congress by which power is vested in the President to levy troops, or draw money from the public treasury, upon the contingency of a declaration or an act of war committed by some foreign State, empire, kingdom, prince, or potentate."

The same question was before the Supreme Court of Kansas in the case of Phoenix Insurance Company v. Welch, Supt., 29 Kansas, 672. The court said:

"In all these cases it is the law of the home government which is enforced, and the action of the foreign government only makes the contingency upon which the law becomes operative. There is no difference in principle between such contingency and any other which may be provided for in the statute. In all such cases it is the duty of the officer charged with the execution of the law to inquire as to the facts, and ascertain whether the contingency named has arrived, and if so to enforce the mandate of his superior, the legislature. We think, therefore, that the section is not obnoxious to the charge of unconstitutionality on this ground."

In the recent case of James, et al. v. Walker, 141 Ky., 88, there was involved the constitutionality of section 2705, Kentucky Statutes, which provides that certain commissioned officers, when employed in active service with troops, also in active service under order of the Governor, shall receive the same pay per day as officers of corresponding grades of the United States Army. The court said:

"We are further of the opinion that the statute is not in conflict with section 60 of the Constitution. The statute does not, in violation of that section, delegate to the Congress of the United States authority to fix the compensation of its militia officers. The right to compensation was determined and conferred upon the military officers of the State by the enactment of the statute. The amount of the compensation is the same fixed by Congress for officers of like grade in the regular army. In thus adopting a salary scale put in effect by an act of Congress, the legislature did not divest itself of any power it possesses."

It is clear from the foregoing authorities that the legislature may enact a law to take effect when certain conditions arise. By the act in question the legislature itself says that, when certain conditions exist, the law shall be so and so. A foreign State may create the conditions, but it has no voice in determining what our law shall be. Our own legislature prescribes the conditions. It alone says when the law shall apply. If the conditions never arise the act is quiescent. When they do arise it immediately becomes effective, not by virtue of

the voice of the foreign legislature, but by virtue alone of the legislative will of this Commonwealth. In the enactment of such a law there is no surrender of the legislative function. It does not take effect on the approval of any other authority than the General Assembly, and does not, therefore, contravene the provisions of section 60 of the Constitution, *supra.*

2. But it is insisted that the statute violates the provisions of our Constitution, with reference to uniformity of taxation. In reply to this contention it may be said that our Constitution does not require absolute uniformity in the levying of license taxes. It plainly contemplates that persons subject to such a tax may be classified, and the only uniformity required is that such statutes shall operate alike upon the members of each particular class. Hager v. Walker, 128 Ky., 1, 107 ﹏. W., 254. Even if the exaction in question be regarded strictly as a tax, we cannot say that the classification adopted by the statute is arbitrary or capricious. It is based on the States from which the foreign corporations come and the legislative policies of those States towards our own companies doing business there. The manifest purpose of such a classification being to accord to insurance companies coming from other States precisely the same treatment that those States accord to our companies, the classification is, in our opinion, based upon a natural, reasonable and well-grounded distinction. The Home Insurance Company v. Swigert, *supra.* However, it is generally held that such impositions are not taxes within the constitutional restrictions as to the taxation, but rather in the nature of a license or condition of entering within the State and transacting business within its limits. Thus in Phoenix Insurance Company v. Welch, *supra,* the court said:

"The Legislature may classify for the purpose of taxation or license, and when the classification is in its nature not arbitrary, but just and fair, there can be no constitutional objection to it. * * .* Here foreign insurance corporations are classified by the States from which they come, and when we consider the purposes of such classification, it cannot be held that there is anything arbitrary or unjust therein. But, doubtless, this charge is not to be considered as within the constitutional restrictions as to taxation, but rather in the

nature of a license or condition of entering this State and transacting business within its limits."

In discussing the same question, the Supreme Court of Indiana, in the case of State, ex rel. Baldwin, Attorney General v. The Insurance Company of North America, 115 Ind., 257, after quoting the above language of the Supreme Court of Kansas, said:

"What is here said by the Supreme Court of Kansas, upon the point under consideration, meets our full approval. Moneys which have or may become due to the State from any foreign insurance company, under the provisions of the retaliatory section of our statutes, regulating foreign insurance companies doing business in this State, are or will be due and payable as a part of the terms or conditions of its entering this State and transacting business within its limits. Such retaliatory section of our foreign insurance company statutes, therefore, is not within our constitutional restrictions in relation to taxation."

It may further be said that the Federal Supreme Court, in holding that a similar law of the State of New York was not violative of the Fourteenth Amendment to the Constitution of the United States, providing that no State shall "deny to any person within its jurisdiction the equal protection of the laws," adopted the same view of the statute. Philadelphia Fire Assoc. v. New York, 119 U. S., 110, 30 L. Ed., 342. After recognizing the right of the State to exclude a foreign corporation entirely, or to restrict its business to particular localities, or to exact such security for the performance of its contract with its citizens as in its judgment would best promote the public interest, the court said:

"The State, having the power to exclude entirely, has the power to change the conditions of admission at any time, for the future, and to impose as a condition the payment of a new tax, or a further tax, as a license fee. If it imposes such license fee as a prerequisite for the future, the foreign corporation, until it pays such license fee, is not admitted within the State or within its jurisdiction."

It may also be added that statutes similar to the one under consideration are in force in a large number of the States, and except in Alabama and our own State— Clark v. Mobile, 67 Ala., 217.; Western & Southern Life Insurance Company v. Commonwealth, 133 Ky., 292, 117

S. W., 376—their constitutionality has been upheld. Talbott v. New York Fidelity, etc. Co., 74 Md., 536, 22 Atl., 395, 13 L. R. A., 584; People v. Philadelphia Fire Assoc., 92 N. Y., 311, 44 Am. Rep., 380; Haverhill Ins. Co. v. Prescott, 42 N. H., 547, 80 Am. Dec., 123; State v. New York Fidelity, etc. Ins. Co., 39 Minn., 538, 41 N. W., 108; The Home Insurance Company v. Swigert (Ill.), *supra;* State, ex rel. Baldwin, Attorney General v. The Insurance Company of North America (Ind.), *supra;* Phoenix Insurance Company v. Welch, Supt. (Kans.), *supra.*

In our opinion, the act is constitutional. It follows that the demurrer to the petition was improperly overruled. Since the doctrine announced in the case of Western & Southern Life Insurance Company v. Commonwealth, *supra,* does not accord with the views herein announced, that case is hereby overruled.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.