DUNCAN, County Atty. v. SMITH et al.

SMITH v. DUNCAN, County Atty., et al.

Court of Appeals of Kentucky.

Nov. 13, 1953.

J. Dudley Inman, Joe A. Wallace, Lawrence G. Duncan, Louisville, for appellant.

J. D. Buckman, Jr., Atty. Gen. of Kentucky, Jo M. Ferguson, Asst. Atty. Gen. of Kentucky, G. B. Johnson, Frankfort, and Arthur C. Coaplen, Louisville, for appellee.

Richard W. Ervin, Atty. Gen., of Fla., Nathaniel L. Goldstein, Atty. Gen. of N. Y., Robert Y. Thornton, Atty. Gen. of Ore., William E. Powers, Atty. Gen., of R. I., Richard Callister, Atty. Gen. of Utah, Duke W. Dunbar, Atty. Gen. of Colo., Edwin K. Steers, Atty. Gen. of Ind., John G. Fox, Atty. Gen. of W. Va., Theodore D. Parsons, Atty. Gen. of N. J., Richard H. Robinson, Atty. Gen. of N. M., Robert E. Smylie, Atty. Gen. of Idaho, Si Garrett, Atty. Gen. of Ala., H. Albert Young, Atty. Gen. of Del., amici curiae.

CULLEN, Commissioner.

Arthur R. Smith, a citizen and taxpayer of Jefferson County, in a declaratory judgment proceeding against the county attorney and other appropriately selected defendants, questioned the validity of the Act of the 1950 General Assembly known as the "Uniform Support of Dependents Act," KRS 407.010 to 407.090. The chancellor, Honorable Macauley L. Smith, in a well reasoned opinion, upheld the Act. Smith and the county attorney have appealed, asserting eight alleged grounds of invalidity of the Act.

We will briefly summarize the provisions of the Act before undertaking discussion of the points raised.

The Act is designed to enable a needy person in one state to secure money for support from a person residing in another state who is legally liable for the support of the needy person. The Act is operative only as between Kentucky and such other states as have "a reciprocal or substantially similar law." The needy person may commence proceedings in a court of the state in which she or he resides, by filing a petition and causing a summons to be issued upon which there is a return of "not found." The court then certifies a copy of the petition and summons to a court of the state in which the person liable for support (known as the "respondent") is believed to be living. The court of that state then issues a summons to the respondent, directing him to appear in that court and answer the petition. If the respondent appears and denies the allegations of the petition, the denials are transmitted to the

court of the state in which the proceedings were instituted (known as the "initiating" state), and that court then hears proof for the petitioner. A transcription of the proof is transmitted to the court of the responding state and the respondent is then given the opportunity to introduce proof and to cross-examine the petitioner and the petitioner's witnesses by depositions or written interrogatories. After all evidence is in, the court of the responding state, if satisfied of the petitioner's need for support and of the respondent's liability, may enter an order requiring the respondent to make support payments. The payments are made to the "probation department or bureau" of the court of the responding state, and are by it transmitted to the court of the initiating state, which delivers them to the petitioner. If the respondent fails to make the required payments, the court of the responding state may punish him for contempt or as for a violation of probation. In all proceedings under the Act, it is the duty of a designated legal officer of each state, known as the "petitioner's representative," to represent the petitioner without fee.

 The first alleged ground of invalidity is that the Act is so vague, indefinite and uncertain as to be incapable of enforcement. The main argument on this point is directed to the definitions of "court" and "petitioner's representative" as contained in KRS 407.020(2) and (7).

While the two definitions are not artfully drawn, we think it is reasonably clear that, as far as *Kentucky* is concerned, "court" means a county court or circuit court, and "petitioner's representative" means a county attorney. The references in the definitions to other kinds of courts, and other kinds of legal officers, are for the purpose of describing appropriate courts and legal officers in *other states* having a similar law.

It is argued that the Act is meaningless and incapable of enforcement in so far as it imposes duties upon "the probation department or bureau" of the court of the responding state, because our courts do not have such departments or bureaus. As we interpret KRS 407.060, it is in the discre-

tion of the court to direct that the support payments be made to the probation department or bureau of the court, and there appears to be no reason why the payments could not be ordered made directly to the court or to the clerk, who would be responsible for forwarding the payments to the court of the initiating state. The handling of the payments is a mere matter of mechanics, and there is nothing about the Act to suggest that handling by a probation department or bureau is mandatory. This is merely one of several instances where the Act refers to officers or agencies which may exist in one of the reciprocating states and not in the other.

It is contended that the Act is not clear as to whether the petitioner's representative must act for resident petitioners as well as for nonresident petitioners. As we read KRS 407.070, it is perfectly plain that the petitioner's representative has the duty to act "in every proceeding pursuant to this chapter," which would include proceedings instituted both by residents and by nonresidents.

There is a further contention that the Act is ambiguous and uncertain with respect to costs. On this point the chancellor said:

"Since the Act provides for no exemption, it would appear that upon the filing of a transcript on behalf of a *nonresident* petitioner, the deposit for costs in circuit courts prescribed by KRS 64.030, and tax levied by KRS 142.011, should be paid. Bond for costs under Civil Code 616 (now KRS 453.-220) need be made only upon respondent's motion. *Resident* petitioners qualified may comply with KRS 453.190 to proceed *in forma pauperis.*"

We concur in the chancellor's opinion, which represents a practical application of the general statutes governing costs. Since there are general statutes governing costs, there was no need for this particular Act to deal with the question of liability for costs, and the Act cannot be considered ambiguous merely because of its failure to deal with the question.

■ The second ground of invalidity asserted by the appellants is that the Act violates that part of Section 171 of the Kentucky Constitution which provides that taxes shall be levied and collected for public purposes only. The argument is that, in requiring the county attorney, a public official, to represent "private persons in private lawsuits," the Act constitutes a diversion of public funds for the benefit of private individuals.

This argument gives us no concern. The payment of public funds to needy individuals has been upheld as being for public purposes. Bowman v. Frost, 289 Ky. 826, 158 S.W.2d 945. It would seem to be immaterial whether aid to the needy takes the form of cash payments or of services by public officials. As pointed out by the chancellor:

"If direct relief may be paid to certain classes of the needy, it would seem to be an *a fortiori* case that free legal services may be granted the needy at much less public expense to enforce the collection of support money from absconding husbands and fathers."

Furthermore, if it is proper for public prosecutors to be required to maintain criminal prosecutions for desertion or nonsupport, there is no apparent reason why they cannot be required to assist in enforcing civil liability for support. In both instances the objective is to coerce the husband or father to comply with an obligation which otherwise would fall on the public generally.

■ The third objection raised against the Act is that it is extraterritorial in its application, in that it purports to give Kentucky courts jurisdiction outside this state, and to give foreign courts jurisdiction in this state.

It is true that the Act is so worded as possibly to give the impression that the Kentucky legislature is attempting to confer powers upon courts of other states to act within this state, and to give our courts powers in other states, but when the Act is examined as a whole it becomes clear that the Act merely provides what our courts may and shall do in this state, and that any powers exercised by foreign courts in their own states are exercised by virtue of a reciprocal law of that state and not by virtue of the Kentucky Act.

Actually, the Act does not attempt to confer extraterritorial jurisdiction. The court of the initiating state exercises no jurisdiction over the respondent, but merely serves as a local agency of convenience for the court of the responding state. The latter court acquires jurisdiction of the respondent by virtue of personal service upon him, and exercises its jurisdiction over him solely within the confines of its state.

While perhaps the court of the responding state does not have full technical jurisdiction over the *petitioner,* yet from a practical standpoint it has such jurisdiction over the petitioner as to enable the court to make a binding determination of the petitioner's rights, or to compel the petitioner to meet certain requirements as a condition of being granted the relief sought. The fact that the petitioner is not required to be physically present in the responding state is no obstacle, because in any ordinary action a petition may be filed in a court of this state without the plaintiff being physically present, and in cases tried on depositions it is possible for a case to be tried in a court of this state without the plaintiff being present in the state. As we view it, the question of whether the plaintiff shall be required to be physically present is a question of practice and not of jurisdiction.

■ The fourth alleged ground of invalidity is that the Act constitutes a compact between states which requires the consent of Congress under Clause 3, Section 10, Article I of the Constitution of the United States. The simple answer to this is that the Act does not bear any of the aspects of an agreement or contract between Kentucky and any other state. Kentucky is free to repeal the Act at any time. Furthermore, the Act does not constitute "the formation of any combination tending to the increase of political power in the states," which was laid down as the measure of a "compact" in State of Virginia v. State

of Tennessee, 148 U.S. 503, 13 S.Ct. 728, 734, 37 L.Ed. 537.

■ It is asserted as the fifth ground of invalidity that the Act violates the privileges and immunities clause of Section 2, Article IV of the U. S. Constitution. There is no merit in this ground, because the Act grants the same privileges to citizens of other states as it does to citizens of Kentucky.

■ Sixth, it is claimed that the Act violates Section 3 of the Kentucky Constitution, in that it grants the privilege of free legal representation to a dependent person when the person liable to furnish support is in another state, but denies such privilege when the person liable for support is in the same state. This is a question of reasonable classification. We think that the practical difficulties involved in the securing of support by one person from a person residing in another state constitute a valid basis for granting free legal representation in such cases and denying it in cases where both persons are residents of the same state. Besides, in the final analysis, the free legal representation is for the benefit of the public as a whole, and not of the particular dependent person.

■ The seventh alleged ground of invalidity is that, because the Act cannot become effective until some other state enacts a similar law, it violates the prohibition contained in Section 60 of the Kentucky Constitution against a law being enacted to take effect upon the approval of any authority other than the General Assembly. The same argument, against a reciprocal law, was rejected in Clay v. Dixie Fire Ins. Co., 168 Ky. 315, 181 S.W. 1123, 1125. In that case the Court said:

"It is clear from the foregoing authorities that the Legislature may enact a law to take effect when certain conditions arise. By the act in question the Legislature itself says that, when certain conditions exist, the law shall be so and so. A foreign state may create the conditions, but it has no voice in determining what our law shall be. Our own Legislature prescribes the conditions. It alone says when the law shall apply. If the conditions never arise the act is quiescent. When they do arise it immediately becomes effective, not by virtue of the voice of the foreign Legislature, but by virtue alone of the legislative will of this commonwealth. In the enactment of such a law there is no surrender of the legislative function. It does not take effect on the approval of any other authority than the General Assembly, and does not, therefore, contravene the provisions of section 60 of the Constitution, supra."

■ Finally, as the eighth alleged ground of invalidity, it is asserted that the Act violates the Sixth Amendment to the U. S. Constitution, and Section 11 of the Kentucky Constitution, in that it permits punishment in the nature of criminal punishment to be imposed upon the respondent without his having had an opportunity to confront the witnesses against him. This argument is addressed to those parts of KRS 407.060 which provide for placing the respondent "on probation" and for punishing him, in case of failure to comply with the support order, as for a contempt or for violation of probation.

We have no difficulty in deciding that the provisions of the Act authorizing punishment for contempt are valid. This punishment is not for a crime, but for the purpose of coercing compliance with the orders of the court. It is used every day for the purpose of enforcing orders for support and alimony in divorce cases.

As concerns the provisions for probation, and for punishment as for violation of probation, it is our conclusion that these provisions simply are not applicable in Kentucky, because there is no procedure recognized in Kentucky for probation except after conviction of a criminal offense. There is no machinery for supervising the kind of probation contemplated by the Act, and no measure or standard of punishment for violation of probation. As stated at an earlier point in this opinion, this is one of

several instances where the Act refers to a procedure which may exist in one of the reciprocating states and not in the other.

The judgment of the lower court is in accord with the views expressed in this opinion. Accordingly, the judgment is affirmed.