Frank W. BURKE, Appellant,

v.

CITY OF LOUISVILLE et al., Appellees.

Court of Appeals of Kentucky.

Feb. 25, 1955.

Alex P. Humphrey, Louisville, for appellant.

S. M. Russell, Ed P. Jackson, Jr., James T. Carey, Wyatt, Grafton & Grafton, Louisville, for appellees.

MONTGOMERY, Justice.

This is an appeal from a declaratory judgment on the issuance of bonds by the City of Louisville. The lower court upheld the validity of the bond issue in the amount of $7,500,000.

Ordinance 191, Series 1954, of the City of Louisville provided for an election on the proposition of the issuance of general obligation bonds in the above amount in order to provide the City of Louisville " * * * with one or more plants, including sites therefor and appurtenances thereto, for the disposal of waste, refuse and garbage by incineration, reduction, or other means, and also by the establishment and improvement of certain streets and bridges in the City of Louisville, including construction, reconstruction, surfacing, resurfacing, widening, straightening, extensions, and new connections of such streets and bridges, the procurement of right-of-way therefor, but excluding maintenance, and including the original acquisition and installation of traffic signs, signals and control devices, * * *." The ordinance further provided for the payment of said indebtedness from the levy and collection of an annual tax in the required maximum amount of $450,000.

This proposition was submitted to the qualified voters in the City of Louisville at the regular election held on November 2, 1954, and resulted in a favorable vote for the bond issue, according to the certification of the county election commissioners of Jefferson County. The question submitted to the voters followed the language of the ordinance.

Thereafter, Ordinance 255, Series 1954, was enacted providing for the issuance of the bonds. In the issuing ordinance, groups of bonds of the face value of $1,000 were broken into series maturing from 1956 to 1995. An option was reserved by the City of Louisville to redeem any or all of the bonds at any time after January, 1960, at a premium ranging from 3% to ½%, depending upon the time of redemption in relation to the time of maturity of the bond. At the time of maturity of the option to redeem in 1960, there would be outstanding $6,550,000 of bonds, ranging in maturity from 1961 to 1975. The premium of the redemption between 1960 and 1965 is 3%.

This declaration of rights was sought pursuant to KRS 66.210, which prohibits the issuance of public bonds without the approval of a court declaring that the bonds are based on a valid indebtedness and are within the constitutional limitation governing the creation of the indebtedness.

There is no question as to the bonds being based on a valid indebtedness, and it is admitted by appellant that this indebtedness is within the constitutional limitation. The City of Louisville at the time of this action had an outstanding bond indebtedness of $65,523,000. The assets in the sinking fund for retirement of unmatured bonds of the City of Louisville totaled $17,756,884.28, making the net indebtedness of the City of Louisville $47,766,115.72. The January 1, 1953 assessment of taxable property in the City of Louisville was $664,176,600, which indicates a debt limit of $66,417,660, based upon the 10% limitation. The proof also shows that the estimated debt limit based upon the estimated January 1, 1954 assessment exceeds this limit and is approximately $68,299,362. It is readily seen that the net debt of $47,766,115.72 plus the amount of the proposed bond issue of $7,500,000 does not exceed the debt limit of the City of Louisville.

Four other questions were raised originally, two of which are not urged by appellant on appeal. One of these dealt with the recent statute enacted on facsimile signatures as provided in KRS 61.390 and the other with the authority to issue and sell the bonds under KRS 66.050. At this point, it is well to say that the ordinance, as we have noted, specified the amount of indebtedness proposed to be incurred, the purpose and the amount of money necessary to be raised annually by taxa-

tion for an interest and sinking fund as is required by KRS 66.050.

Two questions are urged seriously by appellant. These will be treated in turn. Appellant urges that under KRS 66.050 and Section 178 of the Constitution the correct interpretation of the word "purpose" as contained therein is that inasmuch as it is used in the singular it cannot be used to designate multiple or divergent uses of the funds derived from a bond issue. The ordinance ordering the election and the question submitted to the voters provided that the proceeds of the bond issue were to be used for a refuse disposal plant and street and traffic improvements. It is recognized that the standard textbook rule is set forth in 43 Amer.Jur., Section 91, Page 344, Public Securities, but it is equally well recognized that this is not the rule in Kentucky. The rule in Kentucky which has been followed for many years is set out in numerous cases.

An early case very similar to this one is City of Louisville v. Board of Park Commissioners, 112 Ky. 409, 65 S.W. 860, decided in 1901, wherein the question submitted to the voters of the city was in this form:

"'Are you in favor of the issuance of $500,000 of bonds by the city of Louisville for the construction of sewers and for the acquisition of tracts of land for park property in the city of Louisville, as provided in the ordinance approved October 17, 1900?'"

The Court, in deciding there was a single purpose involved, held that the subject of the ordinance was single since it was the issuance of city bonds to the amount of $500,000. The question submitted was whether the city should be authorized or permitted to become indebted in a stated amount to be paid out of the income and revenue of other years. A statement of the purposes or uses to be made of the proceeds derived from the bonds does not vitiate the submission of the single question whether the liability is to be incurred.

The voter is asked to determine whether a certain stated debt shall be created but is not asked to determine how the proceeds shall be expended, as these purposes normally are already decided.

This question was expressly decided in two later cases. Kentucky Light & Power Co. v. James H. Williams & Co., Ky., 124 S.W. 840; Swann v. City of Murray, 146 Ky. 148, 142 S.W. 244.

In Wilkerson v. City of Lexington, 188 Ky. 381, 222 S.W. 74; Bosworth v. City of Middlesboro, 190 Ky. 246, 227 S.W. 170; Snow v. City of Providence, 202 Ky. 627, 260 S.W. 389, the question was treated as settled and the issue of bonds declared legal where only the amount thereof was submitted to the voters and the money derived from the sale of same was to be used for several separate and distinct purposes.

In Allen v. Cromwell, 203 Ky. 836, 263 S.W. 356, 357, the Court, in an opinion by Judge Clarke, approved the Kentucky rule on the same question and justified following this rule by saying:

"But it is urged that other courts have decided the question differently— and so they have—(see Stern v. [City of] Fargo, 18 N.D. 289, 122 N.W. 403, 26 L.R.A.,N.S., 665, and cases annotated in the note thereto), and it is insisted that those opinions are supported by the better reasoning. We might even concede that, too, and it yet would clearly be our duty in the present circumstances to follow rather than overrule such an unbroken line of cases construing our own Constitution, not only because of considerations already suggested, but also because there is no telling how many like issues of bonds may have been marketed by other municipalities upon the faith of these decisions, and without specific approval by this court."

The principle in the Allen v. Cromwell case was later approved in Hoagland v.

Henry County Board of Education, 230 Ky. 75, 18 S.W.2d 875.

■ Thus, it has become firmly established that bond issue questions of the type with which we are now concerned submit only one proposition; that is, shall the issuing authority become indebted in a certain stated amount without regard to the uses for which the proceeds of the issue may be expended? This rule should not be changed because it affords a concrete basis to be used in the planning of future municipal financing. The bond issue here was planned and carried out on the theory that the cases cited were the law and governed the question raised, and it is so held.

Appellant further urges that the voters should be entitled to express an opinion on the cost of the redemption of the bonds at a premium.

■ KRS 66.050 provides that if the legislative body of a city of the first or second class deems it necessary to incur a bonded indebtedness it shall, by ordinance, order an election to determine the sense of the voters. The only things required by the statute to be submitted to the voters in the question on the ballot are: the amount of the indebtedness proposed to be incurred, the purpose, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund.

The interest rate, maturity dates, redemption and recall features, and many other details of the bond issue are to be determined in the discretion of the municipal legislative body. It obviously would be impractical to submit all of the details of the bond issue in the question to be voted on and would only serve to confuse the voters.

It is well known that interest rates fluctuate according to economic conditions, the financial status of the municipality proposing to issue the bonds, and other factors. In many instances, it is deemed wise to provide for the redemption of bonds prior to maturity by payment of a premium in order to redeem the bonds and take advantage of a lower interest rate or in the event of the unforeseen accumulation of surplus funds. Frequently, a net saving can be had by refinancing since the saving on the lower interest rate is greater than the premium paid, as may also be the case where excess funds accumulate in a sinking fund and bonds are called in order to keep from paying further interest. These are some of the things to be considered by the legislative body of the city in the exercise of its discretion, acting in the best interests of the city. This is a customary and accepted method of financing bond issues.

The early redemption of the bonds at a premium is not specifically authorized in KRS 66.050. Is this an implied power of the legislative body of the City of Louisville?

It already has been held that the issuing authority has an implied power to refund bridge revenue bonds at a lower rate of interest. State Highway Commission of Kentucky v. King, 259 Ky. 414, 82 S.W.2d 443; Cook v. City of Louisville, 260 Ky. 474, 86 S.W.2d 157; Security Trust Co. v. City of Paris, 264 Ky. 846, 95 S.W.2d 781. There is no perceivable reason for a different rule in voted bond issues.

■ The option of redeeming bonds at a premium is a contractual method to be determined by the legislative body of a governing authority in the proper exercise of its powers. The Board of Aldermen of the City of Louisville properly exercised this implied contractual power in so providing for redemption at a premium of the bonds to be issued.

The case at bar may be distinguished from the case of McNichols v. City and County of Denver, 123 Colo. 132, 230 P.2d 591, relied upon by appellant, since the details of the bond issue itself providing for redemption in this Colorado case were submitted to the voters. As we have already determined, KRS 66.050 does not require the bond issue details to be set forth in the question to the voters.

Howard v. Board of Education of Harlan, etc., 311 Ky. 130, 223 S.W.2d 721, also cited

by appellant, is distinguishable from the present case because the ordinance calling the election provided for issuance of bonds callable before maturity, and then an attempt was made to issue bonds on a noncallable basis, which was a departure from the question submitted to the voters.

Judgment affirmed.