Harold W. WALTON, Suing for Himself and on Behalf of All Other Citizens and Taxpayers of the Commonwealth of Kentucky Similarly Situated, Appellant,

v.

Henry H. CARTER, Secretary of State of Commonwealth of Kentucky, et al., Appellees.

Court of Appeals of Kentucky.

Aug. 12, 1960.

Raymond F. Bossmeyer, Louisville, for appellant.

John B. Breckinridge, Atty. Gen., Holland McTyeire, H. D. Reed, Jr., Asst. Attys. Gen., Cornelius W. Grafton, Louisville, for appellees.

CULLEN, Commissioner.

The appeal is from a judgment upholding the constitutionality of Senate Bill No.

251 of the 1960 General Assembly (Chapter 106 of the Acts of 1960) and answering various questions of interpretation. In main substance the Act provides for submitting to the voters of the state the question of issuing $100,000,000 in "general obligation bonds" of the state, from the proceeds of which $10,000,000 would be used for developing and improving state parks and $90,000,000 would be used for constructing and improving highways, bridges and tunnels under the federal cost participation program. The Act makes provision for payment of the park bonds from the established ad valorem tax levies, and for payment of the highway bonds from the established Road Fund taxes, subject to priorities for certain existing and future commitments against the Road Fund.

■ The first question presented is whether the Act relates to two subjects, with the result that it violates Section 51 of the Kentucky Constitution and would not provide for a fair and equal election as required by Section 6 of the Constitution. If it were considered that the provisions of the Act as to the *use* of the money are paramount there would be some strength in the argument that the Act does deal with two unrelated subjects, i. e., parks and highways. But in previous decisions this Court has firmly committed itself to the view that the issuance of the bonds is the single subject of an Act of this nature and that such an Act does not violate Section 6 or 51 of the Constitution even though the money is to be devoted to several distinct and unrelated purposes. See Allen v. Cromwell, 203 Ky. 836, 263 S.W. 356; Burke v. City of Louisville, Ky., 275 S.W.2d 899. We continue to adhere to that view and we concur in the conclusion of the circuit court that the Act does not relate to two subjects.

■ The second question grows out of the fact that the Act, in stating the form of the question to be submitted to the voters, identifies the Act as "House Bill No. ——," whereas the correct identification should be "Senate Bill No. 251." The circuit court

held that in preparing the question for submission to the voters the Secretary of State and Attorney General should substitute "Senate Bill No. 251" in place of "House Bill No. ——." We think this ruling clearly was correct. The only purpose of the reference to a bill number was for convenient identification of the Act, and a simple clerical error was made. To correct such an error does not constitute "judicial legislation." See Neutzel v. Ryans, 184 Ky. 292, 211 S.W. 852; Ross v. County Bd. of Education, 196 Ky. 366, 244 S.W. 793; Fidelity & Columbia Trust Co. v. Meek, 294 Ky. 122, 171 S.W.2d 41.

■ The third question is whether the bonds to be issued will be payable only from the respective tax sources provided for in the Act. The circuit court answered this question in the negative and held that the bonds would be general obligations such as to require the Commonwealth to use other tax sources if necessary. While the Act makes provision for payment of the park bonds from ad valorem taxes, and of the highway bonds from Road Fund taxes, it further provides that the bonds shall be issued "with an irrevocable pledge of the full faith, credit, resources and unlimited taxing power of the Commonwealth." Furthermore, the form of the question to be submitted to the voters identifies the bonds as "general obligation bonds."

In Dalton v. State Property and Buildings Commission, Ky., 304 S.W.2d 342, it was held that the Highway Bond Issue of 1956 constituted a general obligation of the Commonwealth not limited in sources of payment to the particular Road Fund Revenues provided for in the Act of submission. Dissenting judges placed emphasis on the fact that the question submitted to the voters merely referred to the issuance of "bonds" without informing the voters that the proposal was to issue general obligation bonds. However, as pointed out above, the 1960 Act so frames the question as to give that information to the voters.

The appellant suggests a reexamination of the doctrine of the Dalton case in the light of the fact that by virtue of the restrictive provisions of Section 230 of the Constitution, Road Fund taxes could not be used to pay off the park bonds, whereby (the appellant argues) the park bonds could not possibly be general obligation bonds. The fallacy in this argument is that it is not essential for the creation of a general obligation of the state that *all* conceivable tax sources be unrestrictedly pledged to the payment of the obligation. Certain tax sources or portions thereof may be excluded or excepted, by reason of previous commitment or otherwise, still leaving under pledge the remainder of the comprehensive taxing power. This is simply a matter of contract between the state and the buyers of the bonds. In the Dalton case it was recognized that certain tax revenues could be excluded from pledge without affecting the character of the bonds as general obligation bonds. We concur in the holding of the circuit court on this question.

■ The fourth question relates to the sufficiency of the notice of election. The Act provides for the publication of a notice of election, setting forth the ballot question and the full text of the Act, in five daily newspapers of bona fide general circulation published in different areas of the state, once a week for four consecutive weeks prior to the election. Provision is made also for the posting of a like notice at the courthouse door in each county. These notice provisions are more extensive than those of the 1956 Highway Bond Act which were held adequate in the Dalton case, and we agree with the circuit court that they are sufficient to give reasonable notice.

■ The fifth question is whether the Act violates Section 47 of the Constitution in that it was a "bill for raising revenue" and did not originate in the House of Representatives. A similar question was decided in the negative in the Dalton case.

We adhere to the ruling in the Dalton case and affirm the holding of the circuit judge which followed it.

■ The sixth question is whether the Act violates Section 180 of the Constitution in that, in pledging the ad valorem tax revenues to payment of the park bonds, it attempts to divert such taxes from the purposes for which they were levied. By KRS 47.010 it is provided that all tax revenues, with certain exceptions, shall be credited to the General Fund of the state. The appellant argues that the ad valorem taxes thus have been levied for General Fund purposes, and cannot be diverted to park bond purposes. One answer is that when taxes have been levied for the General Fund they are available for appropriation for any proper state purpose, of which payment of park bonds would be one, so there is in fact no diversion. Another answer is that Section 180 of the Constitution is concerned only with the expenditure of funds that have been received from a tax levy previously made, whereas the 1960 Act in effect makes provision for a new levy replacing the old levy, with new purposes, and does not purport to dispose of funds from the old levy. We concur in the ruling of the circuit court that there is no violation of Section 180.

■ The final question relates to a provision of the 1960 Act dealing with $30,000,000 of the 1956 Highway Bond Issue which at the time of passage of the 1960 Act remained unmarketed because the interest restrictions imposed by the 1956 Act were such as make the bonds unsalable in the current bond market. See Dalton v. State Property and Buildings Commission, Ky., 304 S.W.2d 342. The 1960 Act directed the State Property and Buildings Commission to exert every effort to sell these bonds, and provided that in the event such efforts were unsuccessful there should be submitted to the voters at the 1960 election a question embracing not only the proposition of issuing new bonds in the amount of $100,000,000, but also the proposition of

removing the interest rate limitation on the unsold $30,000,000 of the 1956 issue. The State Property and Buildings Commission was successful in selling the $30,000,000 of bonds in June, so the alternative ballot question will not need to be submitted. The appellant argues, however, that by virtue of the original inclusion of this contingent provision the Act violated the prohibition of Section 60 of the Constitution against the enactment of legislation to become effective "upon the approval of any other authority than the General Assembly."

It is a well settled rule that a legislature may make a law to become operative on the happening of a certain contingency or future event. 11 Am.Jur., Constitutional Law, sec. 216, p. 926. This Court has approved the power of the legislature to enact a law to take effect when certain conditions arise. See Clay v. Dixie Fire Ins. Co., 168 Ky. 315, 181 S.W. 1123; Duncan v. Smith, Ky., 262 S.W.2d 373, 42 A.L.R.2d 754. Here the Act does not depend for its effectiveness upon any other "authority" but merely upon a general condition, namely, the status of the bond market, which is controlled by general economic factors. It might further be observed that Section 60, in prohibiting the enactment of legislation to become effective upon any other authority than the General Assembly, clearly does not exclude as an acceptable "other authority" the voting public in those instances where by express constitutional provision legislation is permitted or required to be submitted to the voters for approval. The contingent provision of the 1960 Act could in no event have any ultimate effect as law unless approved by the voters, so there could be no violation of the spirit of Section 60. We uphold the decision of the circuit court that the Act does not violate Section 60.

The judgment is affirmed.

MONTGOMERY, J., dissents to the extent that the holdings of this opinion are inconsistent with the views expressed by him in his dissenting opinion in Dalton v. State Property and Buildings Commission, Ky., 304 S.W.2d 342.