RENDERED: MARCH 14, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1440-DG

ALBERT MARSHALL          APPELLANT

v.        ON DISCRETIONARY REVIEW
FROM JEFFERSON CIRCUIT COURT
HONORABLE JESSICA E. GREEN, JUDGE
ACTION NO. 23-XX-000072

COMMONWEALTH OF KENTUCKY        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CETRULO AND COMBS, JUDGES.

CETRULO, JUDGE: Albert Marshall ("Marshall") brings this matter before this Court on discretionary review from a decision of the Jefferson Circuit Court reversing the Jefferson District Court's decision that declared Louisville Metro Code of Ordinances ("LMCO") §§ 135.03 and 135.99 unconstitutional. After careful review, we affirm the decision of the circuit court.

## BACKGROUND

On December 8, 2022, Louisville Metro police received multiple reports of gunshots fired near Buechel Bank Road. According to the citation, Marshall fired a weapon into the air to scare off people who were outside of his home. His home, however, was surrounded by residential buildings and within a short distance to a public road. Louisville Metro had recently enacted a local ordinance regarding firearm discharge. LMCO § 135.03 bars the discharge of firearms within 300 feet of a public roadway or alley. LMCO § 135.99 sets the correlating punishment and defines violations of LMCO § 135.03 as misdemeanors punishable by a fine of up to $500 and/or 12 months of imprisonment.

Louisville Metro Police charged Marshall with violating LMCO § 135.03. Marshall filed a motion to dismiss in the Jefferson District Court in which he challenged the constitutionality of LMCO §§ 135.03 and 135.99 (collectively, the "ordinances"). After a hearing, the district court declared the ordinances violated Kentucky's doctrine of separation of powers to the extent that they authorized incarceration, which the district court believed to be a non-delegable legislative power.

Subsequently, the Commonwealth moved to alter, amend, or vacate the district court's ruling on constitutionality of the ordinances or, in the alternative, amend its order to be final and appealable. The district court denied

the motion in part, but amended the order to clarify that its order was final and appealable.[1]

Next, the Commonwealth appealed to the Jefferson Circuit Court. The circuit court disagreed, reversed the district court's original ruling, and held that the ordinances were constitutional. Marshall motioned to this Court for discretionary review, which we granted. Additional facts will be added as necessary.

On appeal, Marshall argues the ordinances are unlawful because Kentucky Revised Statute ("KRS") 500.020 reserves to the General Assembly the sole authority to define criminal offenses and fix their punishments. Additionally, he argues the General Assembly cannot constitutionally delegate its power to define and enact criminal offenses outside the penal code, and even it if it could, it did not do so with safeguards that pass constitutional scrutiny.[2]

---

[1] We note that in the subsequent order the district court also clarified it denied Marshall's motion to dismiss. His prosecution for violation of the ordinances was to continue, but the district court's original order meant he could not be sentenced to imprisonment for the violation. Because of the appeals to the circuit court and now this Court, Marshall's prosecution has yet to resume.

[2] On appeal, Marshall also argues that LMCO § 135.03 is unenforceable because KRS 65.870 bars local governments from adopting local firearm control ordinances. However, he did not make this argument to the district court, circuit court, or include it in his motion for discretionary review to this Court, and therefore we are not permitted to review the argument. Our Supreme Court has "held that issues not raised in the Motion for Discretionary Review will not be addressed by [the reviewing] Court despite being briefed [] and addressed at oral argument." *Wells v. Commonwealth*, 206 S.W.3d 332, 335 (Ky. 2006) (citing *Ellison v. R&B Contracting, Inc.*, 32 S.W.3d 66, 71 n.8 (Ky. 2000)). As such, we decline to review Marshall's preemption argument.

Conversely, the Commonwealth asserts that KRS 67C.101 and 83A.065 authorize Louisville/Jefferson County Metro Government ("Louisville Metro") to lawfully enact and enforce the ordinances. Furthermore, the Commonwealth argues that the General Assembly may constitutionally delegate its power to define and enact criminal offenses outside the penal code, and it did so here with appropriate safeguards.

## STANDARD OF REVIEW

"[T]his Court's review [] involves the interpretation of sections of the Constitution and statutes. Therefore, this Court applies the *de novo* standard of review in deciding this appeal." *Greene v. Commonwealth*, 349 S.W.3d 892, 898 (Ky. 2011) (citing *Devasier v. James*, 278 S.W.3d 625, 631 (Ky. 2009)).

"[T]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source." *Maysey v. Express Servs., Inc.*, 620 S.W.3d 63, 71 (Ky. 2021) (quoting *Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 648 (Ky. 2017)). Additionally, "we presume that the legislature is aware of the state of the law when it enacts a statute[.]" *Id.* (citing *St. Clair v. Commonwealth*, 140 S.W.3d 510, 570 (Ky. 2004)). As such, "when construing multiple statutes, the statutes are read 'in harmony with one another in order to effectuate all statutes, if possible.'" *Kentucky Dep't of Corr. v. Dixon*, 572 S.W.3d

46, 49 (Ky. 2019) (quoting *Castle v. Commonwealth*, 411 S.W.3d 754, 757-58 (Ky. 2013)). "In construing statutes, we 'presume that the General Assembly did not intend an absurd statute or an unconstitutional one.'" *Id.* (quoting *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)).

## ANALYSIS

### I. Louisville Metro has statutory authority to enforce the ordinance.

Turning first to the statutes applicable here, we must ascertain the meaning of KRS 500.020, KRS 83A.065, and KRS 67C.101 individually *and* harmonize them together as a whole.

Marshall argues that KRS 500.020(1) only permits the General Assembly, not Louisville Metro or any other city, to define criminal offenses and fix their penalties. As such, he posits that these ordinances conflict with KRS 500.020(1). The Commonwealth asserts that KRS 83A.065 allows cities to criminalize ordinances; thus Louisville Metro can lawfully enforce the ordinances.

In addition to analyzing a plain reading of the statutes, we must strive to read them in harmony. We presume the legislature did not intend to create an absurd or unconstitutional statute, and presume the legislature knew that one statute existed when it created another. As such, we believe that staying mindful of the chronological order in which the legislature enacted the statutes is instructive.

First, the General Assembly enacted KRS 500.020 in 1975. KRS 500.020(1) states, "[c]ommon law offenses are abolished and no act or omission shall constitute a criminal offense *unless designated a crime or violation under this code or another statute of this state*." (Emphasis added.) By its plain language, KRS 500.020(1) creates an exception to the rule it establishes. That is to say, while KRS 500.020(1) abolished common law offenses, it also permits the legislature to designate crimes and violations, outside of the penal code, by statutory creation.[3]

Next, the General Assembly enacted KRS 83A.065 in 1992. KRS 83A.065(2) states "[a] city may make the violation of any of its ordinances a misdemeanor or a violation by the express terms of the ordinance."[4]

---

[3] We also find the Kentucky Crime Commission's pre-enactment commentary on the purpose of KRS 500.020 instructive as to the legislative intent behind the statute. "The purpose of subsection (1) is to *eliminate the possibility of conviction for common law crimes*. Before an individual may be convicted of a criminal offense once this code is effective, there must be a statutory designation of that offense. . . . Most common law offenses have already been added to the statutes. Most of those which have not . . . are incorporated into this revision. With these changes, *there is no need to retain any common law crimes*." KRS 500.020 (Ky. Crime Comm'n Comment. (1974)) (emphases added). For his proposition that crimes can only be created when they are explicitly stated in a statute, and the legislature cannot designate that power by statute to a municipality, Marshall urges us to focus our attention on the part of the commentary that states criminal offenses must be designated by statute. *Id*. However, the beginning and end of the commentary make the legislative intent behind KRS 500.020(1) abundantly clear. The General Assembly enacted KRS 500.020(1) to "*eliminate the possibility of conviction for common law crimes*[,]" and upon its enactment, there was "*no need to retain any common law crimes*." *Id*. (emphases added).

[4] While the focus of our analysis centers around KRS 83A.065(2), the entirety of the statute aims to set the parameters that cities must abide by when fixing punishments for the violation of a city ordinance. *See generally* KRS 83A.065.

"[W]e presume that the legislature [was] aware of" KRS 500.020(1) when, 17 years later, it enacted KRS 83A.065(2). *See Maysey*, 620 S.W.3d at 71 (citing *St. Clair*, 140 S.W.3d at 570). Further, rather than create a conflicting and "absurd statute[,]" we presume that the legislature intended for KRS 83A.065(2) to serve as an exception to KRS 500.020(1). *See Dixon*, 572 S.W.3d at 49 (quoting *Brown*, 354 S.W.3d at 551). Reading the statutes together in harmony, we find that KRS 83A.065(2) enables cities to impose criminal penalties for violations of their ordinances and fits the exception enunciated in KRS 500.020(1). *See id*. (quoting *Castle*, 411 S.W.3d at 757-58). The legislature established a limitation on crime creation in KRS 500.020(1), but it retained its own power to create crime outside of traditional means. The 1975 General Assembly with KRS 500.020(1) said that "another statute of this state" could designate criminal offenses, and in 1992, the General Assembly did just that with KRS Chapter 83A.

For his proposition that KRS 83A.065(2) does not meet the exception stated in KRS 500.020(1), Marshall almost exclusively relies on Justice Cunningham's concurrence in *Johnson v. Commonwealth*, 449 S.W.3d 350 (Ky. 2014). There, Justice Cunningham did state that "[i]t is clear that by enacting KRS 500.020(1), the General Assembly did not intend to share its exclusive authority to enact and define crimes and criminal penalties." *Id.* at 354 (Cunningham, J., concurring). However, as the circuit court pointed out, in Justice Cunningham's

-7-

conclusion, he asserted that KRS 83A.065 was unconstitutional only to the extent that it allowed incarceration for ordinance violations. He did not perceive an issue with criminalized ordinances that resulted in fines. *Id*. at 356. This inconsistent analysis does little to bolster Marshall's argument. Further, we note that "[a] minority opinion has no binding precedential value[.]" *J.A.S. v. Bushelman*, 342 S.W.3d 850, 853 (quoting *Ware v. Commonwealth*, 47 S.W.3d 333, 335 (Ky. 2001)). As such, we are not bound by Justice Cunningham's concurring opinion. The majority in *Johnson* did not address the constitutional question because it was not properly preserved. In ten years since that decision, the Supreme Court has not found KRS 83A.065 to be unconstitutional. Its clear language provides that a city may make a violation of any of its ordinances a misdemeanor. The ordinance defined the violation as a misdemeanor and set punishment within the parameters of the limits set by the General Assembly. ($500.00 for a fine and 12 months for a prison term; citing KRS 534.040(2)(a) and KRS 532.090(1)). We conclude that KRS 83A.065, a statute created by the General Assembly, clearly meets the exception created by KRS 500.020(1).

However, Marshall next asserts that KRS 83A.065 applies only to cities but does not apply to Louisville Metro, a consolidated local government. The Commonwealth argues that the plain text of KRS 67C.101 makes KRS

-8-

83A.065 applicable to consolidated local governments. Again, we agree with the Commonwealth and affirm the trial court.

KRS 67C.101(2)(a) bestows upon consolidated local governments "all powers and privileges that cities of the first class and their counties are . . . authorized to exercise under the Constitution and the general laws of the Commonwealth of Kentucky[.]" Additionally, KRS 67C.101(3)(i) gives consolidated local governments the power to "[p]ass and enforce by fines and penalties, if necessary, all ordinances, not inconsistent with law, as are expedient in maintaining the peace, good government, health, and welfare of the inhabitants of the county and prevent, abate, and remove nuisances[.]" Furthermore, subsection (4) of the statute states:

> The powers of the consolidated local government shall be construed broadly in favor of the consolidated local government. *The specific mention, or failure to mention, of particular powers in this section shall not be construed as limiting in any way the general or specific powers of a consolidated local government.*

KRS 67C.101(4) (emphasis added).

Marshall argues that a consolidated local government's ordinance-related powers can only be derived from KRS 67C.101, which does not specifically mention classifying ordinance violations as misdemeanors. However, the plain language of KRS 67C.101 clearly entitles consolidated local governments to utilize the powers granted by KRS 83A.065.

While KRS 67C.101(3)(i) does state that consolidated local governments may "[p]ass and enforce by fines and penalties, if necessary, all ordinances, not inconsistent with law," the rest of the statute's text makes it clear that consolidated local governments are not limited **only** to the powers described in the statute. KRS 67C.101(2)(a) explicitly states that "[a] consolidated local government shall have all powers and privileges that cities of the first class" have. Then, KRS 67C.101(4) definitively puts Marshall's argument to rest by its mandate that "[t]he specific mention, or failure to mention, of particular powers in this section shall not be construed as limiting in any way the general or specific powers of a consolidated local government." The legislature could not have spelled out its intention to give broad authority to consolidated local governments more clearly.

Accordingly, because KRS 83A.065 allows cities to make violations of their ordinances as misdemeanor crimes and this meets the exception to KRS 500.020(1), and because the plain language of KRS 67C.101 carries that authority to consolidated local governments, Louisville Metro had the statutory authority to create and enforce the ordinances.

## II. The General Assembly Properly Delegated Its Legislative Authority.

Next, Marshall argues that, if these statutes grant municipalities the power to define crimes outside the penal code that are punishable by incarceration,

they are unconstitutional and violate our doctrine of separation of powers because the General Assembly may not delegate that power. Even if it could, Marshall argues, the statutes would still be unconstitutional because the legislature did not provide sufficient policies or safeguards to govern the exercise of that legislative power by cities/consolidated local governments.

When a party challenges the constitutionality of a statute, we presume that "the challenged statutes were enacted by the legislature in accordance with constitutional requirements." *Beshear v. Acree*, 615 S.W.3d 780, 805 (Ky. 2020) (citing *Cornelison v. Commonwealth*, 52 S.W.3d 570, 572 (Ky. 2001)). To find a statute unconstitutional, the "constitutional infringement must be 'clear, complete and unmistakable[.]'" *Id.* at 805-06 (quoting *Caneyville Volunteer Fire Dep't v. Green's Motorcycle Salvage, Inc.*, 286 S.W.3d 790, 806 (Ky. 2009)).

### a. The Kentucky Constitution Permits the General Assembly to Delegate its Power to Define Crimes Punishable by Incarceration to Municipalities.

We begin our analysis by looking to the relevant provisions of our Constitution. KY. CONST. § 27 states:

> The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them be confined to a separate body of magistracy, to wit: Those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.

-11-

KY. CONST. § 28 forbids one branch of our government from "exercis[ing] any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted." Further, KY. CONST. § 29 vests the "legislative power" in the General Assembly.

In pertinent part, KY. CONST. § 60 states:

> No law, *except such as relates to the sale, loan or gift of vinous, spirituous or malt liquors, bridges, turnpikes or other public roads, public buildings or improvements, fencing, running at large of stock, matters pertaining to common schools, paupers, and the regulation by counties, cities, towns or other municipalities of their local affairs*, shall be enacted to take effect upon the approval of any other authority than the General Assembly, **unless otherwise expressly provided in this Constitution**.

(Emphases added.) Additionally, KY. CONST. § 156b enables "[t]he General Assembly [to] provide by general law that cities may exercise any power and perform any function within their boundaries that is in furtherance of a public purpose of a city and not in conflict with a constitutional provision or statute."

No provision exists "in our State Constitution that declares explicitly: 'Legislative power may not be delegated.'" *Commonwealth v. Associated Indus. of Ky.*, 370 S.W.2d 584, 586 (Ky. 1963). "Kentucky has recognized the lawful delegation of legislative powers for decades[.]" *Acree*, 615 S.W.3d at 787.

It is true that § 28 prohibits one branch from exercising the powers of another branch, unless a provision of our Constitution permits the exercise of such

-12-

power, and § 29 gives the General Assembly the legislative power. However, § 60 anticipates and permits the delegation of legislative power to municipalities in certain circumstances, and § 156b expressly grants the General Assembly the ability to delegate legislative power to cities.

As Marshall pointed out, § 60 decrees that "No law . . . shall be enacted to take effect upon the approval of any other authority than the General Assembly, *unless otherwise expressly provided in this constitution.*" KY. CONST. § 60 (emphasis added). However, the omitted portion of the quoted section provides exceptions for laws relating to:

> the sale, loan or gift of vinous, spirituous or malt liquors, bridges, turnpikes or other public roads, public buildings or improvements, fencing, running at large of stock, matters pertaining to common schools, paupers, and the regulation by counties, cities, towns or other municipalities of their local affairs[.]

KY. CONST. § 60. As such, while § 60 does protect the seniority of the General Assembly when it comes to legislative power, it also authorizes and anticipates that municipalities will exercise that power for the enumerated categories. Furthermore, the conclusion of § 60, like § 29, leaves the door open for further delegation of the legislative power in other Constitutional provisions, such as § 156b.

KY. CONST. § 156b expressly grants the General Assembly the ability to delegate its legislative power to cities by allowing the enactment of laws that

-13-

enable cities to "exercise *any* power and perform *any* function within their boundaries that is in furtherance of a public purpose of a city[.]"  KY. CONST. § 156b (emphasis added).  The only limiting part of § 156b is that a city's exercise of such power and/or function cannot "conflict with a constitutional provision or statute."  *Id*.

None of the cited constitutional sections conflicts, nor do any of those sections conflict with the statutes previously examined, KRS 83A.065(2) and KRS 67C.101.  Further, Marshall has not cited any constitutional provision that expressly prohibits the General Assembly from delegating to cities, or consolidated local governments, the power to define crimes and penalize violators with incarceration.[5]

Thus, Marshall's argument that the General Assembly may not constitutionally delegate that power depends entirely on the language in § 156b that prohibits a city's exercise of its powers and functions if such exercise would conflict with a statute.  KY. CONST. § 156b.  Said another way, the first half of Marshall's constitutional argument depends on the successes of his statutory argument.  Because we have already determined, *supra*, that KRS 83A.065(2) does not conflict with KRS 500.020(1), and that KRS 67C.101 extends the powers

---

[5] In fact, as The Kentucky League of Cities pointed out in its *amicus curiae* brief to this Court, KY. CONST. § 168, which has been part of our constitution since 1891, specifically contemplates that a municipal ordinance violation may result in criminal penalties.

-14-

conferred by KRS 83A.065 to consolidated local governments, we will not further address that argument here. Still, we move to the second half of Marshall's argument to address whether KRS 83A.065 and KRS 67C.101 contain the safeguards required for proper legislative delegation.

**b. The General Assembly Properly Delegated its Legislative Power via KRS 67C.101 and 83A.065**.

In *Acree*, our undivided Supreme Court recognized the Supreme Court's "intelligible principle" rule, which decrees that "[i]f Congress shall lay down by legislative act an *intelligible principle* to which the person or body authorized to [act] . . . is directed to conform, such legislative action is not a forbidden delegation of legislative power." *Acree*, 615 S.W.3d at 810 (quoting *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409, 48 S. Ct. 348, 72 L. Ed. 624 (1928) (internal quotation marks omitted) (alterations and emphasis in original)). Further, "legislative power can be delegated if the law delegating that authority provides safeguards, procedural and otherwise, which prevent an abuse of discretion thereby protecting against unnecessary and uncontrolled discretionary power." *Id*. at 809 (quoting *Beshear v. Bevin*, 575 S.W.3d 673, 683 (Ky. 2019) (internal quotation marks omitted)).

KRS 67C.101(3)(i) reveals that the General Assembly gave consolidated local governments the power to pass ordinances for the purpose of "maintaining the peace, good government, health, and welfare of the inhabitants of

-15-

the county and prevent, abate, and remove nuisances[.]" This language expands upon the more general reasoning for granting municipal power, "furtherance of a public purpose of [the] city[,]" stated by KY. CONST. § 156b. Alone, KRS 67C.101(3)(i) reveals the intelligible principle for delegating legislative power to consolidated local governments, and that purpose finds its roots in our Constitution.

Additionally, examining the entire text of KRS 83A.065 reveals its intelligible principle. The General Assembly codified KRS 83A.065 to establish parameters for the "fines, penalties, and forfeitures that may be imposed for violation of [a city] ordinance[.]" KRS 83A.065(1). Thus, the General Assembly articulated the intelligible principle for enactment of KRS 83A.065.

Next, we look to whether the General Assembly instilled the sort of safeguards required by the constitution to delegate legislative power in KRS 83A.065 and KRS 67C.101. In *Acree*, our Supreme Court found that KRS Chapter 39A included procedural safeguards and constitutionally delegated legislative power to the Governor during times of emergency. 615 S.W.3d at 811-12. There, the safeguards included "enunciation of criteria for use of the emergency powers, the timely, public notice provided for all orders and regulations promulgated by the

-16-

Governor and [a] time limit on the duration of the emergency and accompanying powers[.]" *Id*. at 812.[6] Further, our Supreme Court found that:

> While the authority exercised by the Governor in accordance with KRS Chapter 39A is necessarily broad, the checks on that authority . . . [include]: judicial challenges to the existence of an emergency or to the content of a particular order or regulation; legislative amendment or revocation of the emergency powers granted the Governor; and finally the "ultimate check" of citizens holding the Governor accountable at the ballot box.

*Id.* at 812-13 (citations omitted).

While not identical to the safeguards discussed in *Acree*, the General Assembly instilled procedural safeguards and constitutionally delegated legislative power via KRS 83A.065 and KRS 67C.101. Both statutes vest legislative power within a municipality's local legislative body, and members of those legislative bodies are elected by the municipality's citizens; thus, the local legislatures are held "accountable at the ballot box." KRS 83A.040(4); KRS 83A.060(6); KRS 67C.103(1)-(13); *see Acree*, 615 S.W.3d at 813.

---

[6] The "enunciation of criteria" prong stems from the intelligible principle standard. *See Acree*, 615 S.W.3d 810-12 ("the intelligible principle *enunciated* by the General Assembly and the legislative criteria pertinent to the use of emergency powers are set forth in [the statute] quoted above.") (emphasis added).

The ordinances are published in a public code or made public through other means. KRS 83A.060(8); KRS 67C.103(10). This satisfies any public notice safeguard requirement. *See Acree*, 615 S.W.3d at 811-12.

Additionally, KRS 83A.065 is a safeguard in itself because it specifically details the procedures and limitations that a local legislature must adhere to when affixing a penalty for an ordinance violation. Consequently, LMCO § 135.99 sets the penalty for a violation of LMCO § 135.03 in precisely a manner that KRS 83A.065(2) permits.

Furthermore, when a violation of an ordinance is made criminal through KRS 83A.065(2), that violation must "be prosecuted in the District Courts of the Commonwealth [by] [t]he county attorney[.]" KRS 83A.065(8). That procedural safeguard protects against any concern that an ordinance made a misdemeanor through KRS 83A.065 cannot be checked by the other branches of our state government. *See Acree*, 615 S.W.3d at 812-13.

Finally, while there is no "time limit on the duration" of an ordinance once it is properly enacted, if an ordinance were inconsistent with a statute, then KY. CONST. § 156b, KRS 67C.101(3)(i), and KRS 83A.060(11) would render that statute invalid. *See* 615 S.W.3d at 812. Thus, the General Assembly retains the power to supplant any ordinance created via KRS 83A.065 and KRS 67C.101.

In *Acree*, our Supreme Court reiterated that "given the realities of modern rule-making a legislative body has neither the time nor the expertise to do it all; it must have help." *Id.* at 810 (quoting *Bd. of Trs. of Judicial Form Ret. Sys. v. Attorney General*, 132 S.W.3d 770, 781 (Ky. 2003)) (internal quotation marks omitted). We share that sentiment here and recognize that different municipalities will create different ordinances because they face unique problems, which "require different responses[.]" *See id.* at 811. Presumably, that is precisely why the General Assembly granted municipalities broad powers to create ordinances, while setting procedures and limitations on affixing penalties for ordinance violations and retaining its power to oust ordinances if need be. *See id.* at 805 (citing *Cornelison*, 52 S.W.3d at 572) (We presume that "the challenged statutes were enacted by the legislature in accordance with constitutional requirements.").

Marshall has not shown a "constitutional infringement [that is] 'clear, complete and unmistakable[.]'" *Id.* at 805-06 (quoting *Caneyville Volunteer Fire Dep't*, 286 S.W.3d at 806). KRS 83A.065(2) and KRS 67C.101 do not conflict with KRS 500.020(1), and the General Assembly provided appropriate safeguards when it delegated its legislative power through those statutes. Thus, we hold that, through the General Assembly's constitutional delegation of its legislative power, Louisville Metro lawfully enacted LMCO §§ 135.03 and 135.99, and the ordinances are enforceable.

## CONCLUSION

Accordingly, we AFFIRM the order of the Jefferson Circuit Court remanding the matter to the Jefferson District Court to continue Marshall's prosecution under LMCO §§ 135.03 and 135.99.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Jennifer E. Hubbard
Louisville, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Matthew F. Kuhn
Solicitor General
Shawn D. Chapman
Deputy Solicitor General
Jacob M. Abrahamson
Assistant Solicitor General
Frankfort, Kentucky

*AMICUS CURIAE* BRIEF FOR
LOUISVILLE/JEFFERSON
COUNTY METRO GOVERNMENT:

Mike O'Connell
Jefferson County Attorney

Kathryn Meador
Mark Barry
Louisville, Kentucky

*AMICUS CURIAE* BRIEF FOR
THE KENTUCKY LEAGUE OF
CITIES:

Megan J. Griffith
Morgain M. Patterson
Lexington, Kentucky